Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Plaintiff
Free Speech Systems, LLC

# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| FREE SPEECH SYSTEMS, LLC, a Texas limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>PAYPAL, INC., a Delaware corporation,<br><br>Defendant. | Case No. _____<br>**COMPLAINT FOR:**<br>(1) **VIOLATION OF UNRUH CIVIL RIGHTS ACT;**<br>(2) **UNLAWFUL, UNFAIR, AND FRAUDULENT BUSINESS PRACTICES UNDER CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200;**<br>(3) **BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Free Speech Systems, LLC ("FSS") hereby files this Complaint against Defendant PayPal, Inc. ("PayPal") for (1) violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51; (2) unlawful, unfair, and fraudulent business practices under Cal. Bus. & Prof. Code § 17200; and (3) breach of the implied covenant of good faith and fair dealing.

**1.0   INTRODUCTION**

1. Plaintiff FSS owns and operates the news web sites at the URLs <infowars.com> and <prisonplanet.com> (collectively, the "News Sites"). The views and opinions expressed on articles and audiovisual programming hosted on these News Sites, including those expressed by its founder, Alex Jones, are often controversial.

2. Plaintiff FSS also owns and operates the web site <infowarsstore.com> (the "Store Site"), which offers several products for sale, including, *inter alia*, dietary and nutritional supplements, and literature written by and for a politically conservative audience.

3. The News Sites provide links to the Store Site, but Plaintiff does not actually sell anything on the News Sites.

4. The Store Site created the first of the PayPal accounts in or about 2000. In or about 2007, FSS assumed ownership and operation of the Store Site and PayPal accounts.

5. Plaintiff uses the payment processing service PayPal to process payments by customers purchasing products on the Store Site and has done so without incident for 18 years.

6. It is at this point well-known that large tech companies, located primarily in Silicon Valley, are discriminating against politically conservative entities and individuals, including banning them from social media platforms such as Twitter, based solely on their political and ideological viewpoints.

7. Plaintiff has been the victim of this recently, as it has been banned from various online platforms based solely on the viewpoints expressed on Plaintiff's programming.

8. Defendant PayPal is the most recent company to join this campaign of censorship. It banned Plaintiff from its payment-processing platform for no reason other than disagreement with the messages Plaintiff conveys.

9. PayPal engaged in this viewpoint-based censorship despite stating that, in determining whether a user violated its acceptable use policy, it would only consider conduct actually involving the use of PayPal. PayPal's decision to kick Plaintiff off its platform had nothing to do with such activities.

10. PayPal banning Plaintiff is a bridge too far and, if allowed, sets a dangerous precedent for any person or entity with controversial views. Acceptable use policies of tech companies, including PayPal's policy, are notoriously broad and subjective, meaning that essentially any expression aside from the most boring and banal interpretation of events potentially violates them. Meanwhile, subject-to-change whims of would-be-censors change from day to day, time to time, and no user of this ubiquitous banking service can predict who will be next.

11. PayPal discriminated against Plaintiff based on its political viewpoints and politically conservative affiliation, thus violating the California Unruh Civil Rights Act. PayPal is engaged in unfair business practices by enforcing its contractual terms in an unconscionable manner, namely arbitrarily banning Plaintiff from its platform for off-platform speech despite never claiming it might ban users for off-platform activity. In doing so, it also violated the implied covenant of good faith and fair dealing with Plaintiff.

12. Plaintiff seeks a temporary restraining order and preliminary injunction because Plaintiff is suffering irreparable harm in the form of lost goodwill as a result of PayPal's actions, and will continue to suffer this harm absent injunctive relief. Injunctive relief must issue in order to preserve the status quo.

## 2.0  PARTIES

13. Plaintiff Free Speech Systems, LLC is a limited liability company organized under the laws of the State of Texas, and is a citizen thereof, with a principal place of business in Austin, Texas.  Plaintiff FSS owns and operates the web site <infowars.com>.  Infowars is a news reporting and political commentary web site that expresses views of hosts and guests that are politically conservative and often controversial.  Plaintiff FSS also owns and operates the web site <infowarsstore.com>, which offers several products for sale, including dietary and nutritional supplements, and literature created by and for politically conservative audiences.

14. Defendant Paypal, Inc., is a corporation organized under the laws of the State of Delaware, with its principal place of business in San Jose, in the State of California, and is a citizen thereof.  It offers payment-processing services through its PayPal.com online platform, and is one of the most prominent and frequently-used payment-processing services in the world.

## 3.0  JURISDICTION AND VENUE

15. This Court has original subject matter jurisdiction over this action based on diversity pursuant to 28 U.S.C. § 1332, as Plaintiff is a citizen of the State of Texas, and Defendant is a citizen of the State of California.

16. This Court has personal jurisdiction over PayPal pursuant to the California Long-Arm Statute, Cal. Code Civ. Proc. § 410.10, as PayPal is headquartered in California and is subject to the general jurisdiction of the courts thereof.

17. Plaintiff is informed and believe that PayPal committed the acts complained of in this Complaint while in the State of California.  Accordingly, venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

**4.0     INTRADISTRICT ASSIGNMENT**

18.     This action arose in Santa Clara County, in that PayPal is headquartered in that county and committed the acts complained of in this Complaint in that county.  Accordingly, pursuant to Local Rules of Court 3-2(c) and (e), the Clerk shall assign the action to the San Jose division.

**5.0     FACTS COMMON TO ALL CLAIMS**

19.     Plaintiff FSS owns and operates the news web sites at the URLs <infowars.com> and <prisonplanet.com> (collectively, the "News Sites").  The views and opinions expressed on articles and audiovisual programming hosted on these News Sites, including those expressed by its founder, Alex Jones, are often controversial.

20.     Plaintiff FSS also owns and operates the web site <infowarsstore.com> (the "Store Site"), which offers several products for sale, including, *inter alia*, dietary and nutritional supplements, and literature written by and for a politically conservative audience.

21.     The News Sites provide links to the Store Site, but the News Sites do not actually use PayPal or offer anything for sale.

22.     The Store Site sells products using the payment processing service PayPal.

23.     Recently, a number of large tech companies started to remove Plaintiff and its content from these companies' online platforms solely due to the political viewpoints expressed on the News Sites.  These platforms include Facebook, Twitter, the Apple App Store, YouTube, Spotify, Stitcher, Pinterest, LinkedIn, MailChimp, and Vimeo.

24.     On September 21, 2018, after 18 years of service, and without any prior warning, Defendant PayPal notified Plaintiff in a phone call that, in 10

business days, it would issue a "permanent limitation" on Plaintiff's PayPal accounts. This limitation will be permanent, and cannot be appealed.

25.  The limitation will prevent Plaintiff from withdrawing, sending, or receiving money through PayPal, effectively preventing it from using the PayPal accounts at all.

26.  The loss of the PayPal accounts and future ability to use PayPal will significantly reduce Plaintiff's income in an amount that is not susceptible to calculation, but more importantly PayPal deciding to kick Plaintiff off its platform has harmed the legitimacy of Plaintiff as a news organization in the eyes of the general public and has already led to a loss of good will.

27.  The purported basis for the permanent limitation PayPal provided is that content on the News Sites violated PayPal's so-called Acceptable Use ("AU") Policy.

28.  Specifically, a PayPal representative stated that, after extensively looking at the News Sites, PayPal determined instances that "promoted hate and discriminatory intolerance against certain communities and religions."

29.  The AU Policy provides four categories of "Prohibited Activities." Notably, the prohibited activities only provide that a user "may not **use the PayPal service** for activities that" fall into one or more of the categories. Sub-paragraph 2 of the Prohibited Activities section provides that a user may not use PayPal for activities that "**relate to transactions** involving . . . (f) the promotion of hate, violence, racial or other forms of intolerance that is discriminatory or the financial exploitation of a crime . . . ."[1]

---

[1]  Substantially similar prohibitions existed in former versions of the AU Policy, except that they did not include "other forms of intolerance that is discriminatory." This "other forms" language was added on June 15, 2018.

30. These terms are purposely vague, and could conceivably (and unconscionably) be applied to any speech at all, given the opaque manner in which PayPal has applied them.

31. The AU Policy mentions nothing about evaluating a user's off-platform activities as the basis for a finding that the user has violated the policy.

32. PayPal's User Agreement (the "UA") lays out, *inter alia*, when PayPal may terminate a user's PayPal account or issue a limitation on it.

33. The UA explains that account limitations "are implemented to help protect PayPal, buyers and sellers when we notice restricted activities or activity that appears to us as unusual or suspicious. Limitations also help us collect information necessary for keeping your PayPal account open."

34. The UA provides several examples of situations where PayPal might issue a limitation, including "[i]f we reasonably believe you have violated the Acceptable Use Policy."

35. Because all the examples are directed at activity that involves risky, fraudulent, or illegal financial transactions, PayPal tells its users it will not issue a limitation based on off-platform activity.

36. The UA states that "[i]f we change the user agreement in a way that reduces your rights or increases your responsibilities, we will provide you with 30 days' prior notice by posting notice on the Policy Updates page of our website."

37. Despite the UA specifically incorporating and referencing the AU Policy, PayPal did not provide Plaintiff with any notice of the June 15, 2018 revisions to the AU Policy.

38. In fact, the current version of the "Policy Updates" page on PayPal's web site is dated April 19, 2018 and makes no reference to the changes to the AU Policy.

39. Plaintiff derives a significant portion of its revenue from products sold on the Store Site.

40. There is no adequate payment alternative to PayPal for Plaintiff's business model, as PayPal has eliminated competitors and has taken a dominant market position in online payment processing. Having effectively cornered the market, it is now using that market power to restrain conservative trade and commerce.

41. The loss of PayPal would lead to the loss of revenue in an amount Plaintiff cannot calculate.

42. Worse, however, is that Plaintiff has immediately lost, and will continue to lose, good will and prospective visitors of the News Sites and customers of the Store Site if PayPal imposes its permanent limitation on Plaintiff.

43. Immediately after PayPal notified Plaintiff of the ban, several national media outlets reported on it, using it as part of a narrative of tech companies ostracizing Plaintiff and heralding the financial collapse of Plaintiff's business.

44. PayPal's decision to ban Plaintiff has harmed Plaintiff's good will with the general public and is likely to result in the loss of future customers and viewers of the News Sites.

### 6.0   FIRST CLAIM FOR RELIEF
### Violation of the Unruh Civil Rights Act
### Cal. Civ. Code § 51

45. Plaintiff incorporates by reference each of the preceding paragraphs of this Complaint as though fully set forth herein.

46. The Unruh Civil Rights Act ("Unruh") guarantees that "all persons" are "entitled to full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."

47.	Although the Unruh Act specifically forbids business establishments from discriminating based on "sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status", this statutorily enumerated list is illustrative, and not exhaustive, of the characteristics on which business establishments may not discriminate.

48.	Discrimination based on political affiliation or ideology is forbidden under Unruh, as it is a personal characteristic.

49.	PayPal is a business establishment under Unruh, as it is a business which provides services to the general public that is headquartered in California.

50.	PayPal began the process of imposing a permanent limitation on Plaintiff's PayPal accounts due to content on Plaintiff's News Sites that, according to PayPal, allegedly "promoted hate and discriminatory intolerance against certain communities and religions."

51.	The News Sites contain content that expresses negative views against politically liberal people, communists, socialists, and religious fanatics. Contributors to the News Sites, including Mr. Jones, have often criticized specific members of political parties, including former President George W. Bush and former candidate Hillary R. Clinton.

52.	The Store Site also sells several literary works by politically conservative authors that criticize politically liberal individuals and organizations.

53.	On information and belief, it is this highly political content that PayPal claims constitutes a violation of its AU Policy.

54.	PayPal will thus imminently ban Plaintiff from its publicly accessible platform because of the political views expressed on the News Sites, and the views of the authors of literature sold on the Store Site.

55. PayPal is restraining Plaintiff's commerce because it is politically conservative and sells to a conservative audience.

56. PayPal's actions amount to discrimination based on political viewpoint and affiliation, which is forbidden under Unruh.

57. Plaintiff has suffered, and will continue to suffer, economic harm in the form of lost sales, revenues, and customers, as well as loss of consumer goodwill and business reputation, as a result of Defendant's Unruh violations in an amount in excess of $75,000.

## 7.0   SECOND CLAIM FOR RELIEF
### Unlawful, Unfair, and Fraudulent Business Practices
### Cal. Bus. & Prof. Code § 17200

58. Plaintiff incorporates by reference each of the preceding paragraphs of this Complaint as though fully set forth herein.

59. Defendant's acts and conduct, as alleged above in this Complaint, constitute unlawful, unfair, and/or fraudulent business acts or practices as defined by California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 (the "UCL").

60. PayPal's AU Policy states that users are not permitted to "use the PayPal service for activities that . . . relate to transactions involving . . . the promotion of hate, violence, racial or other forms of intolerance that is discriminatory . . . ."

61. The AU Policy mentions nothing about evaluating a user's off-platform activities as the basis for a finding that the user has violated the policy, and only states that **use of PayPal** in these prohibited forms constitute a violation of the policy.

62. Only the Store Site uses the PayPal platform; the News Sites are all off-platform.

63. PayPal's UA explains that account limitations "are implemented **to help protect PayPal, buyers and sellers** when we notice restricted activities or activity that appears to us as unusual or suspicious. Limitations also help us collect information necessary for keeping your PayPal account open."

64. The UA provides several examples of situations where PayPal might issue a limitation, including "[i]f we reasonably believe you have violated the Acceptable Use Policy."

65. None of these examples allow PayPal to issue a limitation based on off-platform activity, and all the examples are geared towards activity that involves risky, fraudulent, or illegal financial transactions.

66. Under the Consumer Legal Remedies Act (the "CLRA"), businesses are proscribed from "unfair methods of competition and unfair or deceptive acts," including "[i]nserting an unconscionable provision in the contract." Cal. Civ. Code § 1770(a)(19).

67. Defendant's AU Policy and UA are procedurally unconscionable; they are part of a contract of adhesion and were imposed unilaterally with no prior notice.

68. Defendant's AU Policy and UA are substantively unconscionable; they are grossly one-sided and allow for banning users based on conduct that Defendant gave no notice could constitute a basis for a user ban, and which can be changed at a whim simply by re-defining what certain terms mean from day to day.

69. These terms are particularly unconscionable because of the necessity of services like PayPal for the daily operations of any business engaged in e-commerce, as well as the significant market share PayPal has acquired in recent years by acquiring its most prominent competitors.

70. PayPal's actions go far beyond any reasonable interpretation of the language of its policies, and it is apparent that PayPal is using its policies as a pretext to engage in political discrimination without actually saying so.

71. PayPal's ability to cut off a user from its platform, after that user has made significant investments to use PayPal for its payment processing, without any prior notice or ability to appeal, and by PayPal considering off-platform behavior of the user that it never even suggested it would look at, provides an incredibly lopsided and unfair advantage to PayPal.

72. Defendant's method of enforcing the AU Policy and UA is an unfair business practice under the UCL.

73. It is fundamentally oppressive, unethical, and injurious to customers because it allows PayPal to lie to parties who use its services by claiming that terminations and restrictions due to violations of the AU Policy will be limited to activities that actually use the PayPal service, while in fact looking at the user's off-platform activity.

74. PayPal thus polices the thoughts of its users and engages in viewpoint discrimination without actually telling any of these users, meaning a user may lose access to the essential PayPal platform for activity it reasonably assumed PayPal had no interest in monitoring.

75. PayPal tells users through its policies that it will not discriminate based on political viewpoint, meaning PayPal represents to the average user that PayPal, as a payment processor with no free speech interests in monitoring the off-platform conduct of its users, would be a neutral platform. That has turned out to be a lie.

76. PayPal made such implicit representation to Plaintiff when its subject accounts were created and with the most recent delivery of the AU Policy and UA.

77. Defendant's method of enforcing the AU Policy and UA is a fraudulent business practice under the UCL.

78. Plaintiff reasonably relied on PayPal's representations that it would only look to activities actually using the PayPal service in determining whether a violation of the AU Policy occurred.

79. PayPal's misrepresentation is material, because Plaintiff would not have invested significant resources over 18 years in relying on PayPal as its payment processor if it knew that PayPal was in the habit of engaging in viewpoint-based discrimination against conservatives for off-platform activities.

80. PayPal's actions and policies are unlawful, unfair, and fraudulent, and thus violate the UCL.

81. Plaintiff has suffered, and will continue to suffer, economic harm in the form of lost sales, revenues, and customers, as well as loss of consumer goodwill and business reputation, as a result of Defendant's actions in an amount in excess of $75,000.

## 8.0   THIRD CLAIM FOR RELIEF
**Breach of Implied Covenant of Good Faith and Fair Dealing**

82. Plaintiff incorporates by reference each of the preceding paragraphs of this Complaint as though fully set forth herein.

83. Plaintiff, by accepting PayPal's UA and using its services, entered into a contract with PayPal.

84. Under California law, there is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreements.

85. PayPal, in its take-it-or-leave-it contract of adhesion, provides itself with broad, unilateral power to terminate or restrict a user's PayPal account for a variety of reasons, including for violation of the AU Policy.

86. The AU Policy is also extremely broad, allowing actions up to termination for use of the PayPal platform for promotiong, in PayPal's sole, subjective view, "intolerance that is discriminatory."

87. It is impossible to discern what conduct is actually prohibited under the AU Policy, but the implied covenant of good faith and fair dealing requires PayPal to use wield this power fairly and in good faith. It has blatantly failed to do so in issuing a permanent limitation on Plaintiff's accounts.

88. It is further impossible to discern what is actually prohibited, since PayPal joyfully accepts the business of many people and businesses that any reasonable person could call "intolerant," or "hateful," or "discriminatory." However, these so-called standards are applied arbitrarily and capriciously.

89. In issuing the limitation, PayPal took an arbitrary view of the prohibited conduct in the AU Policy, well beyond what any reasonable user would think is prohibited, to engage in viewpoint discrimination against conservatives.

90. It also premised its actions on activity Plaintiff took completely separate from the PayPal service despite providing no indication it would do this.

91. PayPal provided no prior notice to Plaintiff that it would broaden the scope of its AU policy, which it then used as the basis for kicking Plaintiff off its platform.

92. And finally, PayPal made its decision without any prior notice to Plaintiff and without any opportunity to challenge or appeal this decision.

93. None of these activities show a fair exercise of PayPal's broad authority under its contract with Plaintiff.

94. PayPal's actions, even if they do not violate any express term of the contract, flagrantly violate the implied covenant of good faith and fair dealing.

95. Plaintiff has suffered, and will continue to suffer, economic harm in the form of lost sales, revenues, and customers, as well as loss of consumer

goodwill and business reputation, as a result of Defendant's actions in an amount in excess of $75,000.

## 9.0    DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial on all issues so triable.

## 10.0    PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for the following relief:

(1)    General damages based on Defendant's conduct as alleged herein in an amount to be determined at trial;

(2)    Actual damages based on Defendant's conduct as alleged herein in an amount to be determined at trial;

(3)    Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts in an amount to be determined at trial;

(4)    Prejudgment and post-judgment interest at the rate allowed by law;

(5)    Reasonable attorneys' fees and expenses of litigation;

(6)    Injunctive relief prohibiting Defendant from imposing a permanent limitation on Plaintiff's PayPal accounts; and,

(7)    All other relief to which Plaintiff may be entitled.

Dated: October 1, 2018.          Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

Attorneys for Plaintiff
Free Speech Systems, LLC