Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
RANDAZZA LEGAL GROUP, PLLC
2764Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117
Telephone: 702-420-2001
ecf@randazza.com

Attorneys for Plaintiff
Free Speech Systems, LLC

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FREE SPEECH SYSTEMS, LLC, a Texas limited liability company<br><br>Plaintiff,<br><br>vs.<br><br>PAYPAL, INC., a Delaware corporation,<br><br>Defendant. | Case No. 5:18-cv-06013<br>_____<br><br>**PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Plaintiff Free Speech Systems, LLC ("FSS"), pursuant to Rule 65 of the Federal Rules of Civil Procedure, hereby requests on an emergency basis that this Court issue a Temporary Restraining Order and, subsequently, a preliminary injunction restraining Defendant PayPal, Inc. ("PayPal") from issuing a permanent limitation on Plaintiff's PayPal accounts until an arbitrator rules on whether to issue such injunctive relief in a subsequently-filed arbitration regarding this dispute.  If this relief is not issued on or before October 5, 2018, Plaintiff will suffer irreparable injury.

**1.0    INTRODUCTION**

Plaintiff FSS owns and operates the news web sites <infowars.com> and <prisonplanet.com> (collectively, the "News Sites").  The views and opinions expressed on articles and audiovisual programming hosted on these News Sites, including those expressed by its founder, Alex Jones, are often controversial. Plaintiff also owns and operates the web site <infowarsstore.com> (the "Store Site"), which offers several products for sale, including, *inter alia*, dietary and nutritional supplements, and literature written by and for a politically conservative audience.

The News Sites provide links to the Store Site, but Plaintiff does not actually sell anything on the News Sites.  For the past 18 years and presently, Plaintiff used the payment processing service PayPal to process payments by customers purchasing products on the Store Site.

It is at this point well-known that large tech companies, located primarily in Silicon Valley, are discriminating against politically conservative entities and individuals, including banning them from social media platforms such as Twitter, based solely on their political and ideological viewpoints.  Plaintiff has been the victim of this recently, as they have been banned it from Facebook, Twitter, the Apple App Store, YouTube, Spotify, Stitcher, Pinterest, LinkedIn, MailChimp, and Vimeo based solely on the viewpoints expressed on Plaintiff's programming.

On September 21, 2018, Defendant PayPal joined these censors and notified Plaintiff that it would issue a "permanent limitation" on its PayPal accounts within 10 business days.  PayPal is a payment processor, not a platform for hosting or distributing content.  Despite this, it informed Plaintiff that it decided to issue a permanent limitation, which would result in Plaintiff being unable to use PayPal at all, based on the contents of the News Sites.  The purported basis for this ban from

RANDAZZA | LEGAL GROUP

PayPal was for violation of PayPal's Acceptable Use Policy (the "AU Policy"), specifically that content on the News Sites "promoted hate and discriminatory intolerance against certain communities and religions." However, the policy is explicitly limited to using the PayPal service for prohibited activities; it does not suggest that a party using PayPal may violate the AU Policy based on activities conducted on web sites which do not use PayPal.

PayPal kicking off Plaintiff from its platforms is a bridge too far and, if allowed, sets a dangerous precedent for any person or entity with controversial views. Acceptable use policies of tech companies, including PayPal's AU Policy, are notoriously broad and subjective, meaning that essentially any expression aside from the most boring and banal interpretation of events potentially violates them. There was no prior suggestion by PayPal that Plaintiff had violated the AU Policy, nor was Plaintiff given any opportunity to appeal PayPal's decision.

PayPal discriminated against Plaintiff based on its political viewpoints and politically conservative affiliation, thus violating the California Unruh Civil Rights Act. PayPal is engaged in unfair business practices by enforcing its contractual terms in an unconscionable manner, namely arbitrarily banning Plaintiff from its platform for off-platform speech despite never claiming it might ban users for off-platform activity. In doing so, it also violated the implied covenant of good faith and fair dealing with Plaintiff. Plaintiff is suffering irreparable harm in the form of lost good will as a result of PayPal's actions, and will continue to suffer this harm absent injunctive relief, while PayPal would suffer nothing by an injunction maintaining the status quo. And an injunction preventing PayPal from kicking users off its platform for discriminatory reasons based on conduct it explicitly said it would not consider is in the public interest.

## 2.0    STATEMENT OF RELEVANT FACTS

### 2.1    The Parties

Plaintiff owns and operates the web site <infowars.com>.  (*See* Declaration of Alex Jones ["Jones Decl."], attached as **Exhibit 1**, at ¶ 3.)  Infowars is a news reporting and political commentary web site that expresses views of hosts and guests that are politically conservative and often controversial.  (*See* <infowars.com> home page, attached as **Exhibit 2**; *see also* Jones Decl. at ¶ 3.) The <prisonplanet.com> web site, also owned and operated by Plaintiff, is a similar web site providing politically conservative and controversial news articles and videos. (*See* <prisonplanet.com> home page, attached as **Exhibit 3**; *see also* Jones Decl. at ¶ 4.)  Plaintiff additionally owns and operates the web site <infowarsstore.com>, which offers several products for sale, including dietary and nutritional supplements, and literature created by and for politically conservative audiences. (*See* <infowarsstore.com> home page, attached as **Exhibit 4**; *see also* Jones Decl. at ¶ 7.)[2]  The News Sites provide links to the Store Site, but the News Sites do not actually use PayPal or offer anything for sale.  (*See* Jones Decl. at ¶ 9.) The Store Site sells products using the payment processing service PayPal.  (*See id*.)

Recently, a number of large tech companies started to remove Plaintiff and its content from these companies' online platforms solely due to the political viewpoints expressed on the News Sites.  These platforms include Facebook, Twitter, the Apple App Store, YouTube, Spotify, Stitcher, Pinterest, LinkedIn, MailChimp, and Vimeo.  (*See* Sarah Wells, "Here are the platforms that have

---

[2]   The Store Site created the first of the PayPal accounts in or about 2000.  (*See* Jones Decl. at ¶ 10.)  In or about 2007, FSS assumed ownership and operation of the Store Site and PayPal accounts.  (*See id*.)

1  banned Infowars so far," TECHCRUNCH (Aug. 13, 2018), attached as **Exhibit 5**;[3] *see*

2  *also* Jones Decl. at ¶ 11.)

3     **2.2    PayPal Imposes a Permanent Limitation on Plaintiff's Accounts**

4     On September 21, 2018, and without any prior warning, Defendant PayPal

5  notified Plaintiff in a phone call that, in 10 business days (*i.e.* on October 5, 2018),

6  it would issue a "permanent limitation" on Plaintiff's PayPal accounts.  (*See* audio

7  recording of phone call with PayPal representative, attached as **Exhibit 6**.)  This

8  limitation will be permanent, and cannot be appealed.  (*See id*. at 1:30 and 3:15.)

9  The limitation will prevent Plaintiff from withdrawing, sending, or receiving money

10 through PayPal, effectively preventing it from using its PayPal accounts at all.  (*See*

11 Alice Wong, "PayPal Account Limitations: withdrawal & transfer limits," PAYPAL

12 (Aug. 21, 2018), attached as **Exhibit 7**;[4] *see also* Jones Decl. at ¶ 16.)  The loss of its

13 PayPal accounts will significantly reduce Plaintiff's income in an amount that is

14 not susceptible to calculation, but more importantly PayPal deciding to kick

15 Plaintiff off its platform has harmed the legitimacy of Plaintiff as a news

16 organizations in the eyes of the general public and has already led to a loss of

17 good will.  (*See* Jones Decl. at ¶¶ 22-24.)

18    **2.3    PayPal's Policies**

19    The purported basis for the permanent limitation PayPal provided is that

20 content on the News Sites violated PayPal's AU Policy.  Specifically, a PayPal

21 representative stated that, after extensively looking at the News Sites, PayPal

22 determined instances that "promoted hate and discriminatory intolerance

23 against certain communities and religions."  (**Exhibit 6** at 1:12-1:28.)  The AU Policy

24

25    [3]   Available at:  https://techcrunch.com/2018/08/08/all-the-platforms-that-have-banned-infowars/ (last accessed Oct. 1, 2018.)

26    [4]   Available at: https://www.paypal.com/us/brc/article/understanding-account-limitations (last accessed Oct. 1, 2018.)

27

RANDAZZA | LEGAL GROUP

provides four categories of "Prohibited Activities."  (*See* AU Policy, attached as **Exhibit 8**.)[5]  Notably, the prohibited activities only provide that a user "may not **use the PayPal service** for activities that" fall into one or more of the categories. (*Id.*) (emphasis added.)  Sub-paragraph 2 of the Prohibited Activities section provides that a user may not use PayPal for activities that "**relate to transactions** involving … (f) the promotion of hate, violence, racial or other forms of intolerance that is discriminatory or the financial exploitation of a crime …."[6]  (*Id.*)[7] (emphasis added.)  The AU Policy mentions nothing about evaluating a user's off-platform activities as the basis for a finding that the user has violated the policy.

PayPal's User Agreement (the "UA") lays out, *inter alia*, when PayPal may terminate a user's PayPal account or issue a limitation on it.  (*See* relevant portions of UA, attached as **Exhibit 10**.)[8]  The UA explains that account limitations "are implemented to help protect PayPal, buyers and sellers when we notice restricted activities or activity that appears to us as unusual or suspicious.  Limitations also help us collect information necessary for keeping your PayPal account open." (*See id.*)  The UA provides several examples of situations where PayPal might issue a limitation, including "[i]f we reasonably believe you have violated the Acceptable Use Policy."  (*Id.*)  Because all the examples are directed at activity that involves risky, fraudulent, or illegal financial transactions, PayPal tells its users it will not issue a limitation based on off-platform activity.  (*See id.*)

---

[5]   Available at: https://www.paypal.com/us/webapps/mpp/ua/acceptableuse-full (last accessed Oct. 1, 2018.)

[6]   This is presumably the section Plaintiff allegedly violated, as no other prohibited activities align with the purported basis for the permanent limitation noted in the phone call.

[7]   Substantially similar prohibitions existed in former versions of the AU Policy, except that they did not include "other forms of intolerance that is discriminatory."  This "other forms" language was added on June 15, 2018.  (*Compare* **Exhibit 8** and <archive.org> screenshot of AU Policy dated June 14, 2018, attached as **Exhibit 9**, available at https://web.archive.org/web/20180614133459/ https://www.paypal.com/us/webapps/mpp/ua/acceptableuse-full (last accessed Oct. 1, 2018.))

[8]   Available at: https://www.paypal.com/us/webapps/mpp/ua/useragreement-full (last accessed Oct. 1, 2018.)

RANDAZZA | LEGAL GROUP

The UA states that "[i]f we change the user agreement in a way that reduces your rights or increases your responsibilities, we will provide you with 30 days' prior notice by posting notice on the Policy Updates page of our website." (**Exhibit 10**.)  Despite the UA specifically incorporating and referencing the AU Policy, PayPal did not provide Plaintiff with any notice of the June 15, 2018 revisions to the AU Policy.  (*See* Jones Decl. at ¶ 17.)  In fact, the current version of the "Policy Updates" page on PayPal's web site is dated April 19, 2018 and makes no reference to the changes to the AU Policy.  (*See* "Policy Updates" page, attached as **Exhibit 11**.)[9]

PayPal also has a mandatory arbitration provision in its UA.  As relevant here, the arbitration agreement provides that a user must send PayPal a Notice of Dispute 30 days prior to initiating an arbitration proceeding.  (*See* **Exhibit 10**.)  Due to this 30-day Notice of Dispute requirement, it is impossible for Plaintiff to obtain timely relief via arbitration, since the permanent limitation on Plaintiff's PayPal accounts will take effect October 5, 2018 and is unappealable.  However, Plaintiff only requests that this Court issue injunctive relief preserving the status quo for a duration sufficient for a subsequently selected arbitrator to decide whether a preliminary injunction is appropriate for the duration of the arbitration.  *See Toyo Tire Holdings of Ams., Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 981 (9th Cir. 2010) (holding that "a district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process-provided, of course, that the requirements for granting injunctive relief are otherwise satisfied").

---

[9]    Available at: https://www.paypal.com/us/webapps/mpp/ua/upcoming-policies-full (last accessed Oct. 1, 2018.)

**2.4     Effects of the Permanent Limitation**

Plaintiff derives a significant portion of its revenue from products sold on the Store Site.  (*See* Jones Decl. at ¶ 18.)  A significant portion of purchases from the Store Site occur using the PayPal service.  (*See* Jones Decl. at ¶ 19.)  There is no adequate payment alternative to PayPal for Plaintiff's business model, and the loss of PayPal would lead to the loss of revenue in an amount Plaintiff cannot calculate.  (*See id.* at ¶ 20.)

Worse, however, is that Plaintiff has immediately lost, and will continue to lose, good will and prospective visitors of the News Sites and customers of the Store Site if PayPal imposes its permanent limitation on Plaintiff's accounts.  Immediately after PayPal notified Plaintiff of the ban, several national media outlets reported on it, using it as part of a narrative of tech companies ostracizing Plaintiff and heralding the financial collapse of Plaintiff's business.  (*See, e.g.,* "PayPal bans Infowars over hate speech," Fox News (Sept. 23, 2018), attached as **Exhibit 12**;[10] Brian Fung, "PayPal bans Alex Jones, saying Infowars 'promoted hate or discriminatory intolerance,'" The Independent (Sept. 22, 2018), attached as **Exhibit 13**;[11] Russell Brandon, "PayPal bans Infowars for promoting hate," The Verge (Sept. 21, 2018), attached as **Exhibit 14**.)[12]  PayPal's decision to ban Plaintiff has harmed Plaintiff's good will with the general public and is likely to result in the loss of future customers and viewers of the News Sites.  (*See* Jones Decl. at ¶¶ 21-24.)

---

[10]   Available at:  http://www.foxnews.com/tech/2018/09/23/paypal-bans-infowars-over-hate-speech.html (last accessed Oct. 1, 2018.)
[11]   Available at:  https://www.independent.co.uk/news/world/americas/paypal-bans-alex-jones-infowars-far-right-youtube-twitter-a8549851.html (last accessed Oct. 1, 2018.)
[12]   Available at:  https://www.theverge.com/2018/9/21/17887138/paypal-infowars-ban-alex-jones-hate-speech-deplatform (last accessed Oct. 1, 2018.)

**3.0    LEGAL STANDARD**

To obtain a temporary restraining order, a party must demonstrate either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) the existence of serious questions going to the merits and that the balance of hardships tips sharply in its favor.  *FDIC v. Garner*, 125 F.3d 1272, 1277 (9th Cir. 1997); *Metro Pub. Ltd. v. San Jose Mercury news*, 987 F.2d 637, 639 (9th Cir. 1993).  The first of these standards is a sliding scale, meaning that a stronger showing of probable success allows for a weaker showing of irreparable injury, and vice versa.  *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999).  "The injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'"  *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).  Under these standards, injunctive relief is appropriate when either is met.  These are not two separate tests, but "merely extremes of a single continuum."  *Topanga Press, Inc. v. City of Los Angeles*, 989 F.2d 1524, 1528 (9th Cir. 1993).  Courts also look at whether the balance of equities is in plaintiff's favor, and whether the public interest would be disserved by the issuance of a preliminary injunction.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

**4.0    ARGUMENT**

> **4.1    Plaintiff is Likely to Prevail on its Claims**

>> **4.1.1    Plaintiff Will Likely Prevail on its Unruh Claim**

>>> **4.1.1.1    Political affiliation is protected under Unruh**

Under the Unruh Civil Rights Act, Cal. Civ. Code § 51 ("Unruh"), business establishments[13] may not "exclude individuals who wear long hair or

---

[13]    There is no question that, though it is an internet business, PayPal is a business establishment for purposes of Unruh.  It is headquartered in California and offers payment processing services to

unconventional dress, who are black, who are members of the John Birch Society, or who belong to the American Civil Liberties Union, merely because of these characteristics or associations." *In Re Cox*, 3 Cal. 3d 205, 217-18 (1970).  The Act prohibits discrimination based on "the alleged undesirable propensities of those of a particular race, nationality, occupation, **political affiliation**, or age." *Marina Point, Ltd. v. Wolfson*, 30 Cal. 3d 721, 726 (1982) (emphasis added).

Unruh guarantees that "all persons…are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  The statute does not explicitly forbid discrimination based on political affiliation, but its specific examples are meant only to be "illustrative, rather than restrictive." *White v. Square, Inc.*, 891 F.3d 1174, 1177 (9th Cir. 2018) quoting *Cox, supra* at 215.  While some cases and commentators have suggested that California courts have repudiated an expansive articulation of Unruh's scope, this is not so.  Thus, in *White,* the Ninth Circuit Court of Appeals found Unruh prohibits discrimination against "bankruptcy attorneys" as a class.  *See id*.

The courts have "affirmed the principle … that the Act's enumerated categories are illustrative, rather than restrictive."  *Koebke v. Bernardo Heights Country Club*, 36 Cal. 4th 824, 840 (2005), citing *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142 (1991).[14]  The *Harris* court noted that the "common elements" of the statutorily enumerated protected categories under Unruh was that they "involve personal as opposed to economic characteristics – a person's

---

the general public worldwide. *Compare Candelore v. Tinder, Inc.*, 19 Cal. App. 5th 1138, 228 Cal. Rptr. 3d 336 (2018) (holding Unruh claim for age discrimination was properly stated against online dating platform Tinder).

[14]   The *Harris* court only rejected a broad reading of the statute "to the effect that any classification that might be judicially viewed as 'arbitrary' or 'unreasonable' or 'stereotyped' is therefore subject to judicial scrutiny by virtue of the Act." 52 Cal. 3d. at 1157.

geographical original physical attributes, and **personal beliefs**." *Harris*, 52 Cal. 3d at 1160 (emphasis added).   It emphasized that Unruh properly applies to "classifications listed in the Act (e.g., race, sex, religion, etc.) or similar personal traits, beliefs, or characteristics that bear no relationship to the responsibilities of consumers of public accommodations." *Id*. at 1169.

Political affiliation is a "personal characteristic" protected under Unruh, as it is an example of a "personal belief" that is "fundamental to a person's identity, beliefs and self-definition" and which bears "no relationship to the responsibilities of consumers of public accommodations." *Id*.   Beginning with *Cox* and continuing to the present day, California courts have repeatedly listed "political affiliation" as a protected category under the Unruh Act. *See Semler v. General Electric Capital Corp.*, 196 Cal. App. 4th 1380, 1396 (2011); *Ingels v. Westwood One Broadcasting Services, Inc.*, 129 Cal. App. 4th 1050, 1070 (2005); *Gray v. Kircher*, 193 Cal. App. 3d 1069, 1075 (1987); *Rolon v. Kulwitzky*, 153 Cal. App. 3d 289, 292 (1984).

Indeed, the Ninth Circuit has held expressly that political affiliation is a protected category under Unruh. *See McCalden v. California Library Ass'n*, 955 F.2d 1214, 1220-21 (9th Cir. 1992).   The court there found the plaintiff had stated a claim under Unruh where he alleged he was subject to discrimination based on his status as a "Holocaust Revisionist." *Id*. 1221.   Since *McCalden*, California courts have continued to hold that Unruh is not limited to the statutorily enumerated classifications. *See Koebke*, 36 Cal. 4th at 839-46 (Unruh prohibits discrimination against registered domestic partners); *Pizarro v. Lamb's Players Theatre*, 135 Cal. App. 4th 1171, 1174 (2006) (holding that "age discrimination may violate the Act if used as an arbitrary class-based generalization" even though age is not an unumerated category in Unruh).   At the same time the California Legislature

amended Unruh in 2005, it added language to the Act declaring: "It is the intent of the Legislature that these enumerated bases shall continue to be construed as illustrative rather than restrictive. *See Semler*, 196 Cal. App. 4th at 1395 (quoting Stats. 2005, ch. 420, § 2, p. 3513).

### 4.1.1.2   PayPal discriminated against Plaintiff based on its political affiliation

PayPal began the process of imposing a permanent limitation on Plaintiff's PayPal accounts due to content on the News Sites that, according to PayPal, "promoted hate and discriminatory intolerance against certain communities and religions." (**Exhibit 6** at 1:12-1:28.) While discovery may be necessary to determine precisely what specific content PayPal contends constitutes these alleged violations, since PayPal did not specify any content, Plaintiff acknowledges that the News Sites contain content that expresses negative views regarding politically liberal people, communists, socialists, and religious fanatics. (*See* Jones Decl. at ¶ 5.)  Contributors to the News Sites, including Mr. Jones, have often criticized specific members of political parties, including former President George W. Bush and former Secretary of State Hillary R. Clinton. (*See id*. at ¶ 6.)  The Store Site also sells several literary works by politically conservative authors that critique politically liberal individuals and organizations.  (*See id*. at ¶ 7.)  It is this highly political content that PayPal likely claims constitutes a violation of its AU policy. (*See id*. at ¶ 14.)

PayPal will thus imminently ban Plaintiff from its publicly accessible platform because of the political views expressed on the News Sites, and the views of the authors of literature sold on the Store Site.  It is refusing to provide business services to Plaintiff because it is politically conservative and sells to a conservative audience.  PayPal's actions clearly amount to discrimination based on political viewpoint and affiliation, and is not permitted under Unruh.

**RANDAZZA** | LEGAL GROUP

**4.1.2**  Plaintiff Will Likely Prevail on its Unfair Competition Claim

Cal. Bus. & Prof. Code § 17200 defines actionable "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  The statute "expresses California public policy against unfair competition, and prohibits 'wrongful business conduct in whatever context such activity might occur.'"  *Application Grp. v. Hunter Grp.*, 61 Cal. App. 4th 881, 907 (1998) (quoting *Stoiber v. Honeychuck*, 101 Cal. App. 3d 903, 927 (1980)).  "The 'unlawful' practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made."  *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994).  The scope of the statute is broad, and '"section 17200 'borrows' violations of other laws and treats them as unlawful practices' that the unfair competition law makes independently actionable."  *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  The law is meant to be expansive and "to enable judicial tribunals to deal with the innumerable 'new schemes which the fertility of man's invention would contrive.'"  *Id*. (quoting *American Philatelic Soc. v. Claibourne*, 3 Cal. 2d 689, 698 (1935)).  "Because Business and Professions Code section 17200 is written in the disjunctive, it establishes three varieties of unfair competition – acts or practices which are unlawful, or unfair, or fraudulent.  In other words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa."  *Cel-Tech*, 20 Cal. 4th at 180 (internal quotation marks omitted).  Regardless of the basis on which liability rests, a plaintiff must show a "loss or deprivation of money or property sufficient to qualify as injury in fact."  *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 31, 322 (2011).

An "unfair" business practice under Section 17200 "is one that either 'offends an established public policy' or is 'immoral, unethical, oppressive,

unscrupulous or substantially injurious to consumers."'  *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008) (superseded by statute on unrelated grounds in *Barrett v. Bio-Medical Applications of Md., Inc.*, 2013 U.S. Dist. LEXIS 38596 (D. Md. Mar. 19, 2013) (quoting *People v. Casa Bianca Convalescent Homes, Inc.*, 159 Cal. App. 3d 509, 530 (1984)).  For the "fraudulent" prong, "fraudulent acts are ones where members of the public are likely to be deceived." *Sybersounds Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1151-52 (9th Cir. 2008).

PayPal's AU Policy states that users are not permitted to "use the PayPal service for activities that … relate to transactions involving … the promotion of hate, violence, racial or other forms of intolerance that is discriminatory …." (**Exhibit 8**.)  The AU Policy mentions nothing about evaluating a user's off-platform activities as the basis for a finding that the user has violated the policy, and only states that **use of PayPal** in these prohibited forms constitute a violation of the policy.  PayPal's UA explains that account limitations "are implemented **to help protect PayPal, buyers and sellers** when we notice restricted activities or activity that appears to us as unusual or suspicious.  Limitations also help us collect information necessary for keeping your PayPal account open."  (*See* **Exhibit 10**) (emphasis added.)  The UA provides several examples of situations where PayPal might issue a limitation, including "[i]f we reasonably believe you have violated the Acceptable Use Policy."  (*Id*.)  Because all the examples are directed at activity that involves risky, fraudulent, or illegal financial transactions, PayPal tells its users it will not issue a limitation based on off-platform activity.  (*See id*.)

Under the Consumer Legal Remedies Act (the "CLRA"), businesses are proscribed from "unfair methods of competition and unfair or deceptive acts," including "[i]nserting an unconscionable provision in the contract."  Cal. Civ.

Code § 1770(a)(19).  A contractual term is procedurally unconscionable where there is "an absence of meaningful choice on the part of one of the parties," and a term is substantively unconscionable where the term is "unreasonably favorable to the other party."  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013).  The classic procedurally unconscionable contract term is found in a contract of adhesion, where one party has no bargaining power and must simply take the contract or leave it.  *See id*.  While both procedural and substantive unconscionability must be present under California law for a term to be found unconscionable, they do not need to present to the same extent; a sliding scale approach is used, and a greater showing of procedural unconscionability forgives a weaker showing of substantive unconscionability, and vice versa.  *See Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 910 (2015).

Given how PayPal has enforced its AU Policy and UA, these policies are substantively and procedurally unconscionable.  They are procedurally unconscionable because they were inserted unilaterally by PayPal into its AU Policy and UA without any opportunity for individual users to negotiate them; PayPal's entire agreement, and these provisions in particular, constitute a classic contract of adhesion.  In fact, PayPal seems to claim the right to unilaterally change every provision even after Plaintiff has come to rely on PayPal after 18 years of successful operation.  More importantly, no reasonable reading of these terms would lead a user to believe that off-platform activity or merely offering for sale books by conservative authors could lead to the loss of one's PayPal account; PayPal's policies clearly refer only to activity that involves use of the PayPal service.  Furthermore, PayPal provided no prior notice to Plaintiff when it broadened the scope of its AU Policy, and then used that expanded scope as the basis for issuing a permanent limitation on Plaintiff's accounts.  (*See* Jones

RANDAZZA | LEGAL GROUP

Decl. at ¶ 17.) It did this despite claiming that it would provide 30 days' notice to users of any changes to the UA (which incorporates and cross-references the AU Policy) which "reduces your rights or increases your responsibilities." (*See* **Exhibit 10**.)

PayPal's policies are also substantively unconscionable, at least in the way PayPal arbitrarily interprets them. The UA provides that PayPal may terminate or restrict accounts for violation of the AU Policy. The AU Policy prohibits using PayPal for activities that "relate to transactions involving … (f) the promotion of hate, violence, racial or other forms of intolerance that is discriminatory …." (**Exhibit 8**.) PayPal, through its actions against Plaintiff, has indicated that it considers (1) operating a store that sells books by conservative authors; and (2) operating news web sites, which do not use the PayPal service, that express conservative viewpoints, constitute a violation of this policy. PayPal's actions go far beyond any reasonable interpretation of the language of its policies, and PayPal is using its policies as a pretext to engage in political discrimination without actually saying so. PayPal's ability to cut off a user from its platform, after that user has made significant investments to use PayPal for its payment processing, without any prior notice or ability to appeal, and by PayPal considering off-platform behavior of the user that it never even suggested it would look at, provides an incredibly lopsided and unfair advantage to PayPal. It is thus both procedurally and substantively unconscionable, and is unlawful under the CLRA.

The unconscionability of the contracts with PayPal are especially apparent here given the ubiquity of PayPal in the field of payment processing services. Payment processing, whether through credit card providers or other payment processors like PayPal, are absolutely essential for any business engaged in e-commerce. The Store Site, for example, could not exist without being able to use

online payment processing services, as it would have no way to conduct transactions with customers.  PayPal has existed for 20 years, and starting in 2013 it has made a regular habit of acquiring competitors to increase its market share in this industry, spending over $4 billion to do so.  (*See* Richard Best, "Top Companies Owned by PayPal (PYPL)," INVESTOPEDIA (July 25, 2018), attached as **Exhibit 5**.)[15], [16]  Over this time period, PayPal's market share doubled to 40% in the second quarter of 2018.  (*See* "Mobile share of PayPal's total payment volume from 3rd quarter 2014 to 1st quarter 2018," STATISTA, attached as **Exhibit 16**.)[17]  Due to the popularity and ubiquity of PayPal, any web site conducting e-commerce that does not have access to this payment processing service is at an extreme disadvantage.  Allowing such a prominent market force in an essential market to unilaterally dictate terms to its users without any accountability or bargaining power for other parties is unconscionable.

For many of the same reasons, it is also unfair and fraudulent under the UCL.  It is fundamentally oppressive, unethical, and injurious to customers because it allows PayPal to lie to parties who use its services by claiming that terminations and restrictions due to violations of the AU Policy will be limited to activities that actually use the PayPal service, while in fact looking at the user's off-platform activity.  PayPal lied to Plaintiff eighteen years ago and continued to lie with the most recent UA and AU Policy distributed to Plaintiff.  PayPal improperly polices the thoughts of its users and engages in viewpoint discrimination without actually telling any of these users, meaning a user may lose access to the valuable PayPal

---

[15]   Available   at:   https://www.investopedia.com/articles/company-insights/082416/top-5-companies-owned-paypal-pypl.asp (last accessd Oct. 1, 2018.)

[16]   PayPal's 2nd quarter revenues in 2018 were nearly $**4 billion**, a 22% increase over the prior year.  (*See id.*)

[17]   Available   at:   https://www.statista.com/statistics/478527/paypal-mobile-tpv-share-quarter/ (last accessed Oct. 1, 2018.)

platform for conduct unrelated to PayPal.  None of PayPal's policies suggest that PayPal discriminates based on political viewpoint, either, meaning PayPal represents to the average user that PayPal, as a payment processor with no free speech interests in monitoring the off-platform conduct of its users, would be a neutral platform.  That representation, including that made to Plaintiff eighteen years ago through the present, was a lie.

PayPal's lies and misrepresentations are material, and thus fraudulent. Plaintiff reasonably relied on PayPal's representations that it would only look to activities actually using the PayPal service in determining whether a violation of the AU Policy occurred.  (*See* Jones Decl. at ¶¶ 25-26.)  PayPal's misrepresentation is material, because Plaintiff would not have invested significant resources over 17 years in relying on PayPal as its payment processor if it knew that PayPal was in the habit of engaging in viewpoint-based discrimination against conservatives for off-platform activities.  (*See id*. at ¶ 27.)

PayPal's actions and policies are unlawful, unfair, and fraudulent, and thus violate the UCL.

### 4.1.3   Plaintiff Will Likely Prevail on its Breach of Implied Covenant of Good Faith and Fair Dealing Claim

Plaintiff, by accepting PayPal's UA and using its services, entered into a contract with PayPal.  Under California law, "[t]here is an implied covenant of good faith and fair dealing in every contract that neither party will do anything which will injure the right of the other to receive the benefits of the agreements." *Comunale v. Traders & General Ins. Co.*, 50 Cal. 2d 654, 658 (1958); *see also* Rest. 2d Contracts, § 205.  This implied covenant "finds particular application in situations where one party is invested with a discretionary power affecting the rights of another.  **Such power must be used in good faith**." *Carma Developers (Cal.), Inc. v. Marathon Development California, Inc.*, 2 Cal. 4th 342, 372 (1992)

(emphasis added).   A breach of a specific contractual provision is not a prerequisite to a claim for breach of this implied covenant. *See id*. at 373.

PayPal, in its take-it-or-leave-it contract of adhesion, provides itself with broad, unilateral power to terminate or restrict a user's PayPal account for a variety of reasons, including for violation of the AU Policy.  The AU Policy is also extremely broad, allowing actions up to termination for use of the PayPal platform for promotiong, in PayPal's sole, subjective view, "intolerance that is discriminatory." (**Exhibit 8**.)  It is difficult to discern what conduct is actually prohibited under the AU Policy, but the implied covenant of good faith and fair dealing requires PayPal to wield this power fairly and in good faith.  It has failed to do so in issuing a permanent limitation on Plaintiff's accounts.  In issuing the limitation, PayPal took an impermissively expansive view of the prohibited conduct in the AU Policy, well beyond what any reasonable user would think is prohibited, to engage in viewpoint discrimination against conservatives.  It also premised its actions on activity Plaintiff took completely separate from the PayPal service despite providing no indication it would do this.  PayPal provided no prior notice to Plaintiff that it would broaden the scope of its AU policy, which it then used as the basis for kicking Plaintiff off its platform.  And finally, PayPal made its decision without any prior notice to Plaintiff and without any opportunity to challenge or appeal this decision.  None of these activities show a fair exercise of PayPal's broad authority under its contract with Plaintiff.  PayPal's actions, even if they do not violate any express term of the contract, violate the implied covenant of good faith and fair dealing.

### 4.2    Plaintiff Will Suffer Irreparable Injury in the Absence of the Requested Injunction

Irreparable injury exists where, in the absence of equitable relief, there is a substantial chance that upon final resolution, the movant cannot be made

whole. *See Barth v. Firestone Tire & Rubber Co.*, 673 F. Supp. 1466, 1478 (N.D. Cal. 1987). While harm consisting of calculable monetary loss is typically not irreparable, financial loss may constitute irreparable injury "when damages cannot be calculated within a reasonable degree of certainty or are otherwise speculative, or if the injury is of a continuing nature." *Boles v. Merscorp, Inc.*, 2008 U.S. Dist. LEXIS 104239, *7 (C.D. Cal. Dec. 12, 2008).

Injury justifying a preliminary injunction may also take the form of damage to reputation, loss of customer good will, or injury to competition. *See Regents of Univ. of California v. American Broadcasting Companies, Inc.*, 747 F.2d 511, 520 (9th Cir. 1984); *St. Ives Laboratories, Inc. v. Nature's Own Laboratories*, 529 F. Supp. 347, 350 (C.D. Cal. 1981); *and see American Passage Media Corp. v. Cass Communications, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985). Even the *potential* loss of good will may constitute irreparable harm. *See Mortgage Elec. Registration Sys. V. Brosnan*, 2009 U.S. Dist. LEXIS 87596, *24 (N.D. Cal. Sept. 4, 2009) (citing *Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 841 (9th Cir. 2001) (stating that "[e]vidence of threatened loss of prospective customers or goodwill certainly support a finding of the possibility of irreparable harm").

The Store Site is one of the primary methods by which Plaintiff maintains its businesses, and PayPal is a popular method by which customers purchase goods on the Store Site. (*See* Jones Decl. at ¶¶ 18-19.) There is no adequate replacement for the PayPal platform, and if PayPal issues the permanent limitation on Plaintiff's accounts, there is an extremely high chance that Plaintiff will lose revenue because users will no longer purchase goods on the Store Site. (*See id*. at ¶ 20.) It is impossible to determine, beyond a speculative level, what the extent of this loss of sales and customers will be, but it will be substantial. (*See*

RANDAZZA | LEGAL GROUP

*id.* at ¶ 21.)  Because this susbstantial harm cannot be quantified with certainty, it constitutes irreparable injury.

In addition to this loss of revenue, PayPal's actions and the nationwide media coverage regarding it have caused, and without injunctive relief will continue to cause, significant reputational harm and loss of good will to Plaintiff. Immediately after PayPal's decision, media outlets reported on it with stories about how Plaintiff is essentially being cut off from the Internet and will face imminent financial collapse.  (*See* **Exhibits 12, 13, & 14**.)  While these reports are overblown to an extent, there is little question that Plaintiff is now seen as being a less legitimate business because an ostensibly neutral payment platform decided to exclude them for "hate speech," rather than the actual politically discriminatory reason PayPal decided to exclude it.  This loss of reputation and goodwill constitutes irreparable injury.

### 4.3  The Balance of Hardships Tips in Plaintiff's Favor

PayPal has informed Plaintiff that it will issue a permanent limitation on Plaintiff's accounts by October 5, 2018; PayPal currently allows Plaintiff to process payments using the service until that date.  Accordingly, the requested injunction would only maintain the status quo by allowing Plaintiff to continue using PayPal. Maintaining the status quo would not harm PayPal in any discernible way; there is no suggestion that it will lose revenue or customers if it continues to allow Plaintiff to use its platform.[18]  To the contrary, PayPal will earn more revenue due to sales from the Store Site, and PayPal is unlikely to lose any customers or goodwill where

---

[18]   The possibility of harm to PayPal is especially minuscule as Plaintiff is only requesting that this Court issue an injunction until an arbitrator, if PayPal desires arbitration pursuant to the UA, can decide whether to issue injunctive relief for the pendency of the arbitration.  It is important to note that the arbitration clause in the UA specifies that arbitration will be conducted in the county in which the plaintiff resides, i.e., Travis County, Texas.  Assuming the arbitration agreement is enforceable here, Plaintiff does not consent at this time to any location for arbitration other than Travis County.

RANDAZZA | LEGAL GROUP

it can represent that it is forced to accommodate Plaintiff.  If the injunction is not granted, however, Plaintiff will lose an incalculable amount of revenue, reputation, and consumer goodwill.  It is obvious that the balance of hardships tips in Plaintiff's favor.

### 4.4    The Public Interest Would be Served by the Requested Injunction

The requested injunction would maintain the status quo and allow Plaintiff to continue processing payments using PayPal.  There is nothing to suggest that it would in any way harm the public interest.  In fact, it would serve the public interest for the Court to put PayPal on notice that it cannot deceive its customers and engage in flagrant viewpoint discrimination.  Further, the injunction would ensure that those who might share Plaintiff's views can continue to purchase items from the Store Site, without any adverse effect on anyone else.

### 4.5    Plaintiff Will Provide Adequate Security if PayPal Demonstrates Hardship

In the event that PayPal should prove hardship, it may propose a bond. "[T]he district court has the discretion to set the bond amount in such a sum as the court deems proper." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999).  However, if there is no evidence that the enjoined or restrained party will suffer material harm as a result of the injunction, the court may set the bond amount at zero. *See Connecticut General Life Ins. v. New Images of Beverly Hills*, 321 F.3d 878, 882 (9th Cir. 2003).

PayPal is unlikely to show any hardship suffered by issuance of an injunction. Injunctive relief would merely preserve the status quo.  In fact, the injunction would prevent PayPal from *reducing* its own income.  Should the Court have trouble assessing the proper amount to which to set bond, it should hold an evidentiary hearing to prove hardship.  A mere request for bond without sworn

testimony specifically articulating alleged harm and an opportunity to cross-examine witnesses should not be entertained.

**5.0    PAYPAL SHOULD BE REQUIRED TO SHOW CAUSE**

The requirements for a preliminary injunction are the same for a Temporary Restraining Order.  *See Walczak*, 198 F.3d at 731.  Plaintiff meets and exceeds these standards.  This Court should issue a show-cause order requiring PayPal to demonstrate any countervailing argument as to why the Court should not issue a preliminary injunction continuing the relief granted in the TRO.

**6.0    THE COURT SHOULD ISSUE THE RELIEF ON AN EMERGENCY BASIS**

Plaintiff will continue to be able to use the PayPal service until October 5, 2018, after which time it will be banned from it, causing irreparable injury.  Plaintiff thus requests that the Court hear and decide this motion no later than October 5, 2018.  Deciding the motion on an emergency basis by this date will also allow any injunctive relief issued by the Court merely to be prohibitory and maintain the status quo, rather than be mandatory in nature.

**7.0    CONCLUSION**

For the foregoing reasons, the Court should issue an injunction prohibiting PayPal from enacting a permanent limitation on Plaintiff's PayPal accounts.  This injunction should stay in place until an arbitrator in subsequently-filed arbitration over this dispute between PayPal and Plaintiff decides whether to issue injunctive relief for the pendency of that arbitration.  If PayPal does not wish to compel arbitration, however, the injunction should remain in place for the pendency of this litigation.

Dated: October 1, 2018.          Respectfully Submitted,

RANDAZZA LEGAL GROUP, PLLC

/s/ Marc J. Randazza
_____
Marc J. Randazza, CA Bar No. 269535
Alex J. Shepard, CA Bar No. 295058
2764 Lake Sahara Drive, Suite 109
Las Vegas, Nevada 89117

Attorneys for Plaintiff
Free Speech Systems, LLC

Case No. 5:18-cv-06013

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 1, 2018, I sent a true and correct copy of the foregoing document to Defendant via email and U.S. Mail at the following address:


PayPal, Inc.,

Attn: Litigation Department

2211 North First Street,

San Jose, CA 95131

legal@paypal.com


Respectfully submitted,

_____

Employee,
Randazza Legal Group, PLLC