# EXHIBIT 1

Declaration of Alex Jones

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| FREE SPEECH SYSTEMS, LLC, a Texas limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>PAYPAL, INC., a Delaware corporation,<br><br>Defendant. | Case No.<br><br>**DECLARATION OF ALEX EMRIC JONES IN SUPPORT OF PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

I, Alex Emric Jones, declare:

1. I am over 18 years of age and have never been convicted of a crime involving fraud or dishonesty. I have first-hand knowledge of the facts set forth herein, and if called as a witness, could and would testify competently thereto.

2. I am a managing member of Plaintiff Free Speech Systems, LLC ("FSS"), and I am intimately familiar with the business practices of FSS.

3. FSS owns and operates the web site <infowars.com>. It is a news reporting and political commentary web site that expresses views of hosts and guests that are politically conservative and often controversial.

4. The <prisonplanet.com> web site, also owned and operated by FSS, is a similar web site providing politically conservative and controversial news

DocuSign Envelope ID: 8B6F5EDD-6021-44A6-9277-05091FE3AEBE

articles and videos.  Collectively, the <infowars.com> and <prisonplanet.com> web sites shall be referred to as the "News Sites."

5. The News Sites contain content that expresses negative views against politically liberal people, communists, socialists, and religious fanatics.

6. Contributors to the News Sites, including myself, have often spoken ill of specific members of political parties, including former President George W. Bush and former Secretary of State Hillary R. Clinton.

7. Plaintiff FSS additionally owns and operates the web site <infowarsstore.com>, which offers several products for sale, including dietary and nutritional supplements, and literature created by and for politically conservative audiences.

8. The Store Site also sells several literary works by politically conservative authors that speak poorly of politically liberal individuals and organizations.

9. The News Sites provide links to the Store Site, but the News Sites do not actually offer anything for sale.  The Store Site sells products using the payment processing service PayPal.

10. The Store Site created the first of the PayPal accounts in or about 2000.  In or about 2007, FSS assumed ownership and operation of the Store Site and PayPal accounts.

11. Recently, a number of large tech companies started to remove Plaintiff and its content from these companies' online platforms, upon information and belief, solely due to the political viewpoints expressed on the News Sites.  These platforms include Facebook, Twitter, the Apple App Store, YouTube, Spotify, Stitcher, Pinterest, LinkedIn, MailChimp, and Vimeo.

12. On September 21, 2018, Defendant PayPal, Inc. ("PayPal") notified Plaintiff in a phone call that, in 10 business days, it would issue a "permanent limitation" on Plaintiff's PayPal account.

13.     The purported basis for this action was that, after review of both the News Sites and the Store Site, PayPal determined that Plaintiff was in violation of PayPal's Acceptable Use Policy ("AU Policy") because of instances on the sites that "promoted hate and discriminatory intolerance against certain communities and religions."

14.     Based on the fact that several tech companies had recently caved to political and popular pressure in banning Plaintiff from their platforms, I believe that PayPal issued this permanent limitation solely based on Plaintiff's unpopular political speech on the News Sites, and Plaintiff selling products communicating politically conservative messages on the Store Site.

15.     PayPal did not provide any prior notice that it intended to issue this permanent limitation, and PayPal informed Plaintiff that it could not appeal this determination.

16.     The limitation will prevent Plaintiff from withdrawing, sending, or receiving money through PayPal, effectively preventing it from using its PayPal account at all.

17.     Upon information and belief, PayPal updated its AU Policy on June 15, 2018. It did not provide Plaintiff with any prior notice of this update, and the justification PayPal provided for issuing the permanent limitation on Plaintiff's account was for alleged violations of terms added in this update.

18.     Plaintiff derives a significant portion of its revenue from products sold on the Store Site.

19.     A significant portion of purchases from the Store Site occur using the PayPal service.

20.     There is no adequate payment alternative to PayPal for Plaintiff's business model, and the loss of PayPal would lead to the loss of revenue in an

amount Plaintiff cannot calculate because users will no longer purchase goods on the Store Site.

21. While it is impossible to determine, beyond a speculative level, what the extent of this loss of sales and customers will be, it will be substantial.

22. Plaintiff has immediately lost, and will continue to lose, good will and prospective visitors of the News Sites and customers of the Store Site if PayPal imposes its permanent limitation on Plaintiff's account.

23. Immediately after PayPal notified Plaintiff of the ban, several national media outlets reported on it, using it as part of a narrative of tech companies ostracizing Plaintiff and heralding the financial collapse of Plaintiff's business.

24. PayPal's decision to ban Plaintiff has harmed Plaintiff's good will with the general public and is likely to result in the loss of future customers and viewers of the News Sites.

25. Plaintiff was not aware at any time prior to the September 21, 2018 call that PayPal would look at content or conduct that did not use or involve the PayPal service in determining whether a user had violated PayPal's AU Policy.

26. Plaintiff was led to believe and did reasonably believe, based on the representations in the AU Policy and PayPal User Agreement ("AU"), that PayPal would base such determinations only on content or conduct directly using or involving the PayPal service.

27. If Plaintiff had been aware that PayPal would look at content and conduct not involving or using PayPal to determine whether to terminate or limit user accounts, or that PayPal would engage in viewpoint-based discrimination against politically conservative users, it would not have used and relied upon PayPal for its payment processing needs.

1  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the
2  foregoing is true and correct to the best of my knowledge.
3
4  Executed on  10/1/2018                    .
   
   DocuSigned by:
   *alex Jones*
   Alex Emric Jones