KEKER, VAN NEST & PETERS LLP
MATTHEW M. WERDEGAR - # 200470
mwerdegar@keker.com
KHARI J. TILLERY - # 215669
ktillery@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

BALLARD SPAHR LLP
DAVID J. BODNEY (pro hac vice to be filed)
bodneyd@ballardspahr.com
MARK S. KOKANOVICH (SBN 230286)
kokanovichm@ballardspahr.com
1 East Washington Street, Suite 2300
Phoenix, AZ 85004-2555
Telephone:  602.798.5454
Facsimile:  602.798.5595

SCOTT S. HUMPHREYS (SBN 298021)
humphreyss@ballardspahr.com
2029 Century Park East, Suite 800
Los Angeles, CA  90067-2909
Telephone: 424.204.4400
Facsimile: 424.204.4350

Attorneys for Defendant
PAYPAL, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FREE SPEECH SYSTEMS, LLC, a Texas limited liability company,<br><br>                     Plaintiff,<br><br>           v.<br><br>PAYPAL, INC., a Delaware corporation,<br><br>                     Defendant. | Case No. 5:18-cv-06013 LHK (SVK)<br><br>**PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**<br><br>Judge:       Hon. Lucy H. Koh<br><br>Action Filed:  October 1, 2018<br><br>Trial Date:  None |

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  RELEVANT BACKGROUND .............................................................................3

III.  LEGAL STANDARD.............................................................................................5

IV.  ARGUMENT .........................................................................................................6

    A.  FSS has not established, and cannot establish, that it is likely to suffer irreparable harm. .........................................................................................6

    B.  FSS has not established, and cannot establish, a likelihood of prevailing on the merits of any of its claims. ...............................................................8

        1.  The Unruh Act does not apply to FSS or its claims....................................8

        2.  FSS has not established a likelihood of success on its UCL claim............11

        3.  FSS has not established a likelihood of success on its breach of the implied covenant claim ...........................................................................14

    C.  The balance of hardships and the public interest are in PayPal's favor.................16

V.  CONCLUSION.....................................................................................................17

1306235

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page(s)</u>

3

<u>Federal Cases</u>

4

*A&A Int'l Apparel, Inc. v. Xu*
   No. CV 15-644-GW(AGRX), 2015 WL 12850544 (C.D. Cal. Jan. 29, 2015) ........................ 8

5

*Alliance for the Wild Rockies v. Cottrell*
   632 F.3d 1127 (9th Cir. 2011) ................................................................... 5

6

*Aurora World, Inc. v. Ty Inc.*
   719 F. Supp. 2d 1115 (C.D. Cal. 2009) ................................................... 7

7

8

*Caribbean Marine Servs. Co., Inc. v. Baldridge*
   844 F.2d 668 (9th Cir. 1988) .................................................................... 6

9

*Earth Island Inst. v. Carlton*
   626 F.3d 462 (9th Cir. 2010) ................................................................... 6

10

11

*Global Horizons, Inc. v. United States Dep't of Labor*
   510 F.3d 1054 (9th Cir. 2007) ............................................................... 16

12

*Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*
   736 F.3d 1239 (9th Cir. 2013) ............................................................ 6, 7

13

14

*Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*
   138 S. Ct. 2448 (2018) ....................................................................... 3, 16

15

*McCalden v. California Library Ass'n*
   955 F.2d 1214 (9th Cir. 1990) .......................................................... 10, 11

16

17

*Miami Herald Publ'g Co. v. Tornillo*
   418 U.S. 241 (1974) ............................................................................. 16

18

*Pom Wonderful LLC v. Pur Beverages LLC*
   No. CV1306917MMMCWX, 2015 WL 10433693 (C.D. Cal. Aug. 6, 2015) ..................... 6, 7

19

20

*Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*
   324 U.S. 806 (1945) ............................................................................. 17

21

*Realtek Semiconductor, Corp. v. LSI Corp.*
   No. C-12-3451-RMW, 2014 WL 2738226 (N.D. Cal. June 16, 2014) .................... 8

22

23

*Reebok Intern. Ltd. v. J. Baker, Inc.*
   32 F.3d 1552 (Fed. Cir. 1994) .................................................................. 7

24

*Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*
   240 F.3d 832 (9th Cir. 2001) ................................................................... 5

25

26

*Titaness Light Shop, LLC v. Sunlight Supply, Inc.*
   585 Fed. Appx. 390 (9th Cir. 2014) ......................................................... 7

27

28

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

*Vectren Commc'ns Servs. v. City of Alameda*
  No. C 08-3137 SI, 2009 WL 2566722 (N.D. Cal. Aug. 18, 2009) ......................................... 16

*Winter v. Natural Resources Defense Council, Inc.*
  555 U.S. 7 (2008) ........................................................................................................................ 5

**State Cases**

*Arnett v. Dal Cielo*
  14 Cal. 4th 4 (1996) .................................................................................................................... 9

*Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc.*
  2 Cal. 4th 342 (1992) .......................................................................................................... 2, 15

*Cry Wolf v. Walt Disney Pictures & Television*
  162 Cal. App. 4th 1107 (2008) ................................................................................................ 15

*Delaney v. Superior Court*
  50 Cal. 3d 785 (1990) ................................................................................................................ 9

*Gerdlund v. Elec. Dispensers Int'l*
  190 Cal. App. 3d 263 (1987) .................................................................................................... 15

*Harris v. Capital Growth Investors XIV*
  52 Cal. 3d 1142 (1991) .............................................................................................................. 9

*In re Cox*
  3 Cal. 3d 205 (1970) ........................................................................................................ 8, 9, 10

*Kasky v. Nike, Inc.*
  27 Cal. 4th 939 (2002), *as modified* (May 22, 2002) ......................................................... 2, 11

*Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC*
  55 Cal. 4th 223 (2012) ....................................................................................................... 12, 13

*PMC, Inc. v. Porthole Yachts, Ltd.*
  65 Cal. App. 4th 882 (1998) ..................................................................................................... 15

*Rotary Club of Duarte v. Board of Directors*
  178 Cal. App. 3d 1035 (1986) ............................................................................................. 9, 10

*Sanchez v. Valencia Holding Co., LLC*
  61 Cal. 4th 899 ......................................................................................................................... 12

*Sonic-Calabasas A, Inc. v. Moreno*
  57 Cal. 4th 1109, 311 P.3d 184 (2013) .................................................................................... 12

*Third Story Music, Inc. v. Waits*
  41 Cal. App. 4th 798 (1995) ................................................................................................. 3, 15

*Winchell v. English*
  62 Cal. App. 3d 125 (1976) ...................................................................................................... 10

1306235

1

**State Statutes**

Cal. Bus. & Prof. Code § 17200 ............................................................................... 8, 11

Cal. Civ. Code § 51 ................................................................................................. 1, 8, 9

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

Defendant PayPal, Inc. ("PayPal") opposes Plaintiff Free Speech Systems, LLC's ("FSS") First and Second Emergency Motions for a Temporary Restraining Order and Preliminary Injunction.

## I.      INTRODUCTION

FSS's "emergency motion"—which seeks to force PayPal to continue to provide payment processing services to FSS's online store, despite PayPal's undisputed contractual right to terminate those services—fails to satisfy any of the requirements for a temporary restraining order or preliminary injunction and should be denied.

*First and foremost*, FSS has not established, and cannot establish, any likelihood of immediate and irreparable harm.  According to FSS, PayPal is simply one "popular method by which consumers purchase goods" from FSS.  TRO Br. at 30.  It is not the *only* method; FSS concedes that there are others.  Indeed, PayPal is just one of many commercial payment processing services in the market.  FSS offers no evidence that it cannot secure payment processing services from an alternative provider, or that it has even attempted do so in the days since it was notified of PayPal's decision to terminate the parties' business relationship.  Furthermore, even if FSS were to lose some sales while it transitions to a different payment processing service, any such harm can be compensated with money damages; it is not irreparable and does not warrant the extraordinary remedy of a temporary restraining order.  FSS offers only conclusory assertions to the contrary.

*Second*, FSS also fails to establish a likelihood of success on the merits of any of its claims.  FSS attempts to invoke California's Unruh Civil Rights Act, Cal. Civ. Code § 51 (the "Unruh Act"), which prohibits discrimination based on an individual's membership in a particular group.  But even if peddlers of inflammatory, tabloid-style news and conspiracy theories could otherwise qualify as a protected group under the Act, the Unruh Act protects **individuals** from discrimination.  It does not apply to commercial enterprises such as FSS, and it has never been applied under circumstances remotely similar to those before this Court.  And, even if the act did apply, FSS has not established that it is a member of a protected group under the Unruh Act.  FSS merely asserts that it is "politically conservative and sells to a conservative audience."  TRO Br.

at 12.  Being a politically conservative (or liberal) *commercial entity* is not akin to individual membership in a protected group.  If it were, any for-profit business could claim protection under the Unruh Act.

FSS' unfair competition law ("UCL") claim also badly misses the mark.  FSS contends that PayPal's express prohibition on activities related to the "promotion of hate, violence, racial or other forms of intolerance" is unconscionable and therefore violative of the UCL.  *See* TRO Br., Ex. 8.  The premise of FSS' argument is contrary the fundamental purpose of the UCL, which is to promote fairness in commercial markets.  *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 949 (2002), *as modified* (May 22, 2002).  Moreover, FSS' UCL claim is based on the false premise the "News Sites" (inforwars.com and prisonplanet.com) and the "Store Site" (infowarsstore.com) are essentially unrelated, and that it is unconscionable for PayPal to terminate its relationship with the Store Site based on the "off-platform" activities of the News Sites.  TRO Br. at 15.  But one need only go to the home pages of the News Sites and the Store Site to see that they are one-in-the-same.  The News Sites promote the Store Site and its products, and the revenue from the Store Site directly funds the activities of the News Sites.  The News Sites also directly solicit donations and subscription fees, also processed by PayPal.  Simply put, PayPal has the contractual right to terminate its relationship with any user for any reason, including but not limited to, violations of PayPal's Acceptable Use Policy.

FSS' breach of the implied covenant of good faith and fair dealing claim is equally without merit.  PayPal's User Agreement with FSS grants PayPal the discretion to terminate its services at any time, for any reason, upon notice.  ("PayPal, in its sole discretion, reserves the right to suspend or terminate this user agreement").[1]  FSS does not contend otherwise.  And "[a]s to acts and conduct authorized by the express provisions of the contract, no covenant of good faith and fair dealing can be implied which forbids such acts and conduct."  *Carma Developers (Cal.), Inc. v. Marathon Dev. California, Inc*., 2 Cal. 4th 342, 374 (1992).  In other words, with

---

[1] *See* Declaration of Khari J. Tillery in Support of PayPal's Opposition to Plaintiff's Emergency Motion for a Temporary Restraining Order and Preliminary Injunction. ("Tillery Decl.") Ex. A (PayPal User Agreement) at 33-34; https://www.paypal.com/us/webapps/mpp/ua/useragreement-full.

2

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

only a narrow exception not alleged to apply here, "*[c]ourts are not at liberty to imply a covenant directly at odds with a contract's express grant of discretionary power[.]*" *Third Story Music, Inc. v. Waits*, 41 Cal. App. 4th 798, 808 (1995) (emphasis added).  Because FSS' request for injunctive relief is contrary to this rule, FSS has not established, and cannot establish, a likelihood of success on the merits.

Finally, the balance of the equities tips strongly in PayPal's favor, as the relief FSS seeks—forcing PayPal to continue to provide services to a commercial enterprise whose activities are contrary to PayPal's own core values of diversity and inclusion[2]—would violate PayPal's exercise of its constitutionally protected right to free speech.  *See, e.g., Janus v. Am. Fed'n of State, Cty., & Mun. Employees, Council 31*, 138 S. Ct. 2448, 2464 (2018).  Furthermore, under the doctrine of unclean hands, FSS' own misconduct—including secretly recording its telephone conversation with PayPal and posting it to the internet without permission to generate publicity—precludes the possibility of the extraordinary equitable relief it seeks.  For the same reasons, the public interest would not be served by granting the unprecedented injunctive relief requested by FSS.

For all these reasons, as explained in detail below, FSS motion for a temporary restraining order and preliminary injunction should be denied.

## II.    RELEVANT BACKGROUND

FSS is a for-profit Texas limited liability company that operates the websites "Infowars" and "PrisonPlanet," among other commercial ventures.  Infowars and PrisonPlanet offer a mélange of tabloid-style sensationalist and fake news stories targeting, among others, ethnic and religious minorities and members of the LGBQT community.[3]  The websites also advertise a variety of nutritional supplements and other products that are sold through FSS' online store.[4]

---

[2] https://www.paypal.com/stories/us/our-commitment-to-diversity-and-inclusion-at-paypal

[3] Infowars is perhaps most notorious for spreading false reports that the mass shooting of children at Sandy Hook Elementary School in Newtown, Connecticut was an elaborate government hoax involving actors, rather than actual victims.  *See, e.g.,* https://www.nbcnews.com/tech/tech-news/after-years-crisis-actor-smears-sandy-hook-conspiracy-targets-ask-n892926.

[4] *See* https://www.infowars.com/; https://www.prisonplanet.com/; https://www.infowarsstore.com/.

3

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

All of these websites are interrelated.  The News Sites (Infowars and PrisonPlanet) include prominent links to the Store Site and advertisements for products sold on the Store Site.  Tillery Decl., Exs. B and C (screen shots News Sites home pages).  Conversely, the Store Site (InfowarsStore) touts the fact that its profits are being used to support the activities of the News Sites.  *Id.*, Ex. D (screen shot of the Store Site homepage) ("We're proud of our fellow patriots and Infowarriors for taking part and helping to support us in the fight for truth. … Your gracious support for our crew in the fight for liberty goes directly towards independent alternative news media, and we owe all of our success and effectiveness to you.").

According to FSS, since approximately 2007, FSS has contracted with PayPal to provide FSS' payment processing services to its subsidiary websites.  Declaration of Alex Jones ("Jones Decl.") ¶ 10.[5]  According to FSS, "PayPal is a popular method by which customers purchase goods on the Store Site."  TRO Br. at 20.  PayPal's User Agreement governs the parties' commercial relationship and provides that PayPal may suspend or terminate access to or use of its websites, software, systems, or services for any reason and at any time upon notice to the FSS:

> PayPal, ***in its sole discretion***, reserves the right to suspend or terminate this user agreement, access to or use of its websites, software, systems (including any networks and servers used to provide any of the PayPal services) operated by us or on our behalf or some or all of the PayPal services for any reason and at any time upon notice to you and, upon termination of this user agreement, the payment to you of any unrestricted funds held in your PayPal balance.[6]  (Emphasis added)

Tillery Decl., Ex. A at 33-34 (emphasis added)

On September 20, 2018, PayPal provided telephonic notice to FSS pursuant to the User Agreement that it was terminating FSS' accounts.  Tillery Decl., Ex. E (Declaration of Heidi Machock ("Machock Decl.")) ¶¶ 4-8.  Although it was not required to provide FSS with any grace period, PayPal informed FSS that it was giving the company ten business days to transition to other payment processors, of which there are many.  *Id.* ¶ 7; Tillery Decl., Ex. F (Declaration of Lisa Hrabosky ("Hrabosky Decl.")) ¶¶ 3-6.  PayPal also offered to help FSS transition to a

---

[5] Specifically, FSS asserts that PayPal has provided services to the "Store Site" since 2000, and that FSS "assumed ownership and operation of the Store Site and PayPal accounts" in 2007.  *Id.*

[6] *See* https://www.paypal.com/us/webapps/mpp/ua/useragreement-full.

4
PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

1   new vendor.  Machock Decl. ¶ 8.

2       PayPal did not make its decision public, and did not intend to.  Tillery Decl., Ex. G

3   (Declaration of Justin Higgs ("Higgs Decl.")) ¶ 4.  FSS, however, immediately publicized

4   PayPal's decision on its Infowars website, posting on September 21, 2018 an article entitled:

5   "Bombshell:  PayPal Bans Infowars After Lobbying By Soros-Funded Group."[7]  *Id.* ¶ 5. PayPal

6   has since learned that FSS surreptitiously recorded its telephone conversation with PayPal's

7   representatives in violation of California law, which it subsequently posted to its Infowars

8   website.  Machock Decl.  ¶¶ 6, 11.[8]

9       Ten days after PayPal had provided notice, FSS filed the present lawsuit and its

10  "emergency" motion for a temporary restraining order.  FSS does not claim to have made any

11  efforts prior to filing suit to secure an alternative payment processing vendor.

12  **III.   LEGAL STANDARD**

13      A temporary restraining order is a matter of equitable discretion and is "an extraordinary

14  remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such

15  relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 22 (2008).  The analyses

16  for granting a temporary restraining order and a preliminary injunction are "substantially

17  identical."  *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir.

18  2001).

19      A plaintiff seeking preliminary injunctive relief must establish "[1] that he is likely to

20  succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary

21  relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public

22  interest." *Winter*, 555 U.S. at 20.  Alternatively, an injunction may issue where "the likelihood of

23  success is such that serious questions going to the merits were raised and the balance of hardships

24  tips sharply in plaintiff's favor," provided that the plaintiff can also demonstrate the other *Winter*

25  factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011)

26  [7] *See* https://www.infowars.com/bombshell-paypal-bans-infowars-after-lobbying-by-soros-funded-group/.

27  [8] *See* https://www.infowars.com/shock-audio-listen-to-the-phone-call-where-paypal-banned-infowars/.

28

(citation and internal quotation marks omitted).  Under either standard, the plaintiff bears the burden of making a clear showing on these elements and on entitlement to this extraordinary remedy.  *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010).

## IV.    ARGUMENT

### A.    FSS has not established, and cannot establish, that it is likely to suffer irreparable harm.

A party seeking injunctive relief must offer evidence of likely irreparable harm, and may not rely on "unsupported and conclusory statements regarding harm [the plaintiff] *might* suffer." *Pom Wonderful LLC v. Pur Beverages LLC*, No. CV1306917MMMCWX, 2015 WL 10433693, at *5 (C.D. Cal. Aug. 6, 2015) (quoting *Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013)) (emphasis in original).  In this case, the only evidence that FSS points to in support of its irreparable harm claims are a few conclusory statements in the declaration of Alex Jones.  *See* TRO Br. at 20.

Mr. Jones states that "[a] significant portion [but not all] of purchases from the Store Site occur using the PayPal service."  And he baldly asserts that "[t]here is no adequate payment alternative to PayPal for Plaintiff's business model," and that "the loss of PayPal would lead to the loss of revenue in an amount Plaintiff cannot calculate because users will no longer purchase goods on the Store Site."  Jones Decl. ¶¶ 19-20.  Notably, Mr. Jones does not explain why FSS cannot rely on other existing payment methods.  And he does not offer any facts concerning any efforts whatsoever by FSS to find an alternative payment processor since it received notice of termination from PayPal on September 20.

Mr. Jones' statements are precisely the kind of conclusory assertions that the Ninth Circuit repeatedly has rejected as insufficient to establish irreparably harm.  *See, e.g., Herb Reed Enterprises, LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) (holding that pronouncements "grounded in platitudes rather than evidence" are insufficient); *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) (holding that "[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction" and adding that a "plaintiff must *demonstrate* immediate threatened

6

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

injury as a prerequisite to preliminary injunctive relief" (emphasis in original)).  Indeed, Mr. Jones' statements are worse than conclusory—they are counterfactual in key respects. Specifically, Mr. Jones' unsupported assertion that there is no adequate payment processing alternative to PayPal is contrary to fact as there are numerous other payment processing providers that FSS could utilize instead of PayPal to handle payments for FSS' online store.[9]  *See* Hrabosky Decl. ¶¶ 3-6.

Additionally, even if FSS had evidence to back up its claims of imminent loss of sales, "[l]oss of sales alone will not support a finding of irreparable injury 'because acceptance of that position would require a finding of irreparable harm to every plaintiff regardless of circumstances.'"  *Aurora World, Inc. v. Ty Inc.,* 719 F. Supp. 2d 1115, 1169 (C.D. Cal. 2009) (quoting *Reebok Intern. Ltd. v. J. Baker, Inc*., 32 F.3d 1552, 1557 (Fed. Cir. 1994)).  Calculating lost sales—based on historical sales records or other evidence—is a common exercise for damages expert witnesses in litigation.  And FSS offers no support for its assertion that its lost sales will be impossible to calculate or that he attempted to mitigate any alleged harm by transitions to a new payment processor.

FSS' cursory loss of goodwill argument fairs no better.  The only evidence it cites are a few news articles reporting on PayPal's decision to stop doing business with FSS.  *See* TRO Br. at 21.  But that publicity was self-inflicted.  PayPal did not publicize its decision to terminate FSS' accounts, and it did not intend to.  Higgs Decl. ¶ 4.  Rather, FSS affirmatively chose to publicize PayPal's decision, calling it a "ban" prompted by lobbying by a "Soros-funded group." *Id.* ¶ 5.  Furthermore, that such publicity will actually harm FSS' business—which is based on generating controversy—is pure speculation.  Notably, FSS has not offered any evidence of a loss of sales or other business impact since it disclosed PayPal's decision.  And "a finding of reputational harm may not be based on 'pronouncements [that] are grounded in platitudes rather than evidence.'"  *Titaness Light Shop, LLC v. Sunlight Supply, Inc*., 585 Fed. Appx. 390, 391 (9th Cir. 2014) (quoting *Herb Reed*, 736 F.3d at 1250) (brackets in original); *see also Pom Wonderful*,

---

[9] FSS itself alleges that PayPal only has a 40% market share.  *See* TRO Br. at 17.

7

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

2015 WL 10433693, at *5.

In short, FSS has failed to establish a likelihood of irreparable harm, and the Court should deny FSS' motion on that basis alone.  *See, e.g., Realtek Semiconductor, Corp. v. LSI Corp.,* No. C-12-3451-RMW, 2014 WL 2738226, at *4 (N.D. Cal. June 16, 2014) ("[i]rreparable harm is an essential prerequisite for a grant of injunctive relief[.]"); *A&A Int'l Apparel, Inc. v. Xu*, No. CV 15-644-GW(AGRX), 2015 WL 12850544, at *3 (C.D. Cal. Jan. 29, 2015) ("the moving party must first demonstrate that such injury is likely before other requirements for the issuance of an injunction will be considered." (internal quotations omitted).

**B.      FSS has not established, and cannot establish, a likelihood of prevailing on the merits of any of its claims.**

FSS' complaint against PayPal includes three causes of action:  a claim under the Unruh Act, a claim under California Business and Professions Code § 17200, and a claim for breach of the implied covenant of good faith and fair dealing.  FSS' motion for injunctive relief fails to establish a likelihood of success on the merits as to any of these claims.

**1.      The Unruh Act does not apply to FSS or its claims**

Under the Unruh Act, businesses may not "exclude *individuals* who wear long hair or unconventional dress, who are black, who are members of the John Birch Society, or who belong to the American Civil Liberties Union, merely because of these characteristics or associations." *In re Cox*, 3 Cal. 3d 205, 217-18 (1970) (emphasis added).  FSS is not an "individual," or even an association of likeminded individuals.  It is a Texas limited liability company.  *See* Compl. ¶ 13. And FSS has not cited, and PayPal has been unable to locate, a single Unruh Act case that did not involve discrimination against an *individual.*  The Court should reject FSS novel and entirely unsupported assertion that an Unruh Act claim can survive without any claim of individual discrimination.

The plain language of the Unruh Act describes individual characteristics that can only be held by natural persons.  Section 51 provides:

> All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or

8

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

Cal. Civ. Code § 51(b).  Although courts have added various categories to the list in Section 51 over the years, the California Supreme Court has held that the characteristics listed in Section 51(b) are "illustrative" of the kinds of discrimination prohibited by the Act.  *In re Cox*, 3 Cal. 3d at 212.

In *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142 (1991), the California Supreme Court examined the legislative history of the Unruh Act to determine what other types of characteristics could be afforded protected-class status under the Act.  The court noted that the Legislature emphasized the importance of Section 51's enumerated list of characteristics by repeating it three times.  *Id.* at 1160*; see also* Cal. Civ. Code §§ 51(b), 51(c), 52(d).  Accordingly, the California Supreme Court held that "[i]n order to give significance to the Legislature's specific and repeated emphasis on these categories, we must ascertain their common element," which the court found to be "personal as opposed to economic characteristics."  *Harris*, 52 Cal. 3d at 1160.

The characteristics enumerated in Section 51 apply only to natural persons, and not to companies.  A company obviously lacks a sex, race, color, or sexual orientation.  In this context, interpreting the term "person" in Section 51 to include a company would make no sense and would therefore violate a basic tenet of statutory construction under California law.  *See, e.g., Arnett v. Dal Cielo*, 14 Cal. 4th 4, 22 (1996) ("Courts should give meaning to every word of a statute if possible, and should avoid a construction making any word surplusage.") (citing *Delaney v. Superior Court*, 50 Cal. 3d 785, 798–99 (1990)).  Because a corporation that has no "sex" or "race" it cannot possibly make claims for discrimination on that basis, the Court should not interpret Section 51(b) as providing such a right.

FFS may seek to argue that *Rotary Club of Duarte v. Board of Directors*, 178 Cal. App. 3d 1035 (1986), stands for the proposition that entities, and not just individuals, may bring claims under the Unruh Act.  But *Rotary Club* actually underscores the fact a that company cannot bring claims for alleged discrimination based on company practices or characteristics.  In *Rotary Club*,

9

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

a local chapter of the Rotary Club decided to admit female members in violation of the male-only membership rules set by Rotary Club International. *Id.* at 1044–46.  Thereafter, the local club's charter was revoked by the international organization. *Id.*  The local chapter and several female members brought a claim for declaratory and injunctive relief against Rotary Club International for sex discrimination against female members. *Id.* The court held that the international organization's actions constituted sex discrimination in violation of the Unruh Act. *Id.* at 1059. The court also found that the local chapter of the Rotary Club could bring a claim in conjunction with the female members because the action taken against the local chapter was "on account of its association with women." *Id.* at 1061 (citing *Winchell v. English*, 62 Cal. App. 3d 125, 129 (1976)).

At most, *Rotary Club* stands for the proposition that an association can bring claims for injunctive and/or declaratory relief under the Unruh Act in response to discrimination against individual members of the association.  Here, FSS is not an association with members.  And it does not purport to bring its claims on behalf of in association with any individual.  FSS is bringing its claims on its own behalf, alleging that it, not any individual, is the victim of discrimination. *See, e.g.,* TRO Br. at 12 (accusing PayPal of terminating its contract with FSS "because of the views expressed on the News Sites, and the views of the authors of literature sold on the Store Site").  Neither the text of the Unruh Act nor any case interpreting the Act supports such an application of the statute.

Furthermore, even if a company, as opposed to an individual or an association of individuals, could bring an Unruh Act claim, FSS fails to establish that it is a member of a protected group under the Act.  Indeed, FSS does not claim that it is a member of any group enumerated in the statute or any other specific group—such as the John Birch Society or the ACLU, mentioned in *In re Cox*—that is subject to discrimination.  Rather, FSS merely asserts that it is "politically conservative and sells to a conservative audience" and that PayPal is cancelling its accounts for these reasons.  TRO Br. at 12.  FSS' amorphous assertions stand in contrast to those at issue in *McCalden v. California Library Ass'n,* 955 F.2d 1214 (9th Cir. 1990), cited by FSS.  There, a divided panel of the Ninth Circuit held that on a motion to dismiss,

plaintiff's allegation that he was discriminated against because he was "a member of a class of 'Holocaust Revisionists,' who are subject to invidious discrimination because they spread unpopular views about the history of the Holocaust" was sufficient state a claim under the Unruh Act. *Id.* at 1220-21. But even in *McCalden* the majority made clear that its decision was based on the standard for evaluating a motion to dismiss. *Id.* at 1221("On a motion to dismiss, however, the court must deem the complaint's allegations to be true."). That standard for evaluating the likelihood of success on the merits in the context of a motion for a TRO is much more stringent and places the burden of proof squarely on the plaintiff.

If vague claims of political affiliation with the right or the left were sufficient to invoke the Unruh Act, the Act would effectively be without limits. Indeed, if FSS' sweeping interpretation were applied, advertisers could be sued for discrimination by television production companies or television stations for pulling their advertising from television shows whose content they no longer wish to be affiliated with. Likewise, vendors of commercial services could be sued for not providing business services to other companies whose products, branding, or marketing are inconsistent with the vendor's own branding or marketing. No court has ever endorsed such a boundless interpretation of the statute's provisions.

In short, the Unruh Act does not apply to FSS' claims and, therefore, FSS has not established and cannot establish a likelihood of success on the merits.

### 2.   FSS has not established a likelihood of success on its UCL claim

California's unfair competition law ("UCL") defines "unfair competition" as "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. By defining unfair competition to include "*any unlawful*" business practice, the UCL "permits violations of other laws to be treated as unfair competition that is independently actionable." *Kasky*, 27 Cal. 4th at 949. As the basis for its UCL claim here, FSS contends that PayPal's Acceptable Use Policy, incorporated by reference into PayPal's User Agreement, violates the Consumer Legal Remedies Act (the "CLRA"), which prohibits certain "unfair methods of competition and unfair or deceptive acts or practices," including "[i]nserting an unconscionable provision in the contract." FSS claims that PayPal's

11

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

Acceptable Use Policy is unconscionable because it "mentions nothing about evaluating a user's *off-platform activities* as a basis for finding that the user has violated the policy." TRO Br. at 14 (emphasis added). FSS' argument is factually misleading and legally incorrect. It also ignores that the fact that PayPal has the contractual right, as set forth in its User Agreement, to terminate any user account, for any reason, at its discretion. Tillery Decl., Ex. A at 33-34.

Unconscionability is a defense to the enforcement of a contract and the party asserting the defense—here, FSS—bears the burden of proof. *Sanchez v. Valencia Holding Co.*, *LLC*, 61 Cal. 4th 899, 911(2015). For FSS to prevail on this defense, it must establish both *procedural* and *substantive* unconscionability. Procedural unconscionability "addresses the circumstances of contract negotiation and formation, focusing on oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC,* 55 Cal. 4th 223, 246 (2012). And substantive unconscionability "pertains to the fairness of an agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *Id.* California courts have intentionally set an extremely high bar for establishing unconscionability. As the California Supreme Court reiterated, "[c]ommerce depends on the enforceability, in most instances, of a duly executed written contract" and "[a] party cannot avoid a contractual obligation merely by complaining that the deal, in retrospect, was unfair or a bad bargain." *Sanchez*, 61 Cal. 4th at 911. Rather, to establish unconscionability, the terms of the agreement must be "overly harsh," "unduly oppressive," "so one-sided as to shock the conscience," or "unfairly one-sided." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1145, 311 P.3d 184, 202 (2013) (internal quotation marks omitted). FSS' claim does not (and cannot) meet this demanding standard.

*First*, FSS offers no basis for a finding of procedural unconscionability in agreeing to the terms of PayPal's Acceptable Use Policy, which is incorporated by reference into the User Agreement. FSS is a sophisticated business entity operating multiple for-profit websites with millions of visitors. If FSS was concerned with the terms PayPal's Acceptable Use Policy, it could have chosen (and now must choose) a different payment processing option. According to FSS, "PayPal is a popular method by which customers purchase goods on the Store Site," but not the only one. TRO Br. at 20. FSS also asserts that PayPal only controls 40% of the online

12

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

payment market (TRO Br. at 17), leaving plenty of alternatives to choose from.  Thus, even assuming the truth of FSS' contention that the Store Site "could not exist without being able to use online payment processing services" (TRO Br. at 16-17), it is not entitled to use PayPal's service in violation of PayPal's User Agreement, including its Acceptable Use Policy.

*Second*, FSS also fails to establish a basis for a finding of substantive unconscionability. "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." *Pinnacle*, 55 Cal. 4th at 246 (internal quotations omitted). No reasonable person's conscience would be shocked at PayPal's User Agreement, which allows PayPal, "in its sole discretion," to terminate any user agreement.  Tillery Decl., Ex. A at 33-34.  The same is true for PayPal's Acceptable Use Policy, which directly prohibits PayPal users from using "the PayPal service for activities that … "***relate to transactions*** involving … the promotion of hate, violence, racial or other forms of intolerance that is discriminatory."  TRO Br., Ex. 8 (emphasis added).  FSS does not deny that the content of its websites violates this straightforward and reasonable policy designed promote PayPal's core values of tolerance, diversity, inclusion, and equity.

Rather, FSS' entire argument is based on the false premise that the "Infowar Store" website[10] ("Store Site"), which sells a variety of products, is somehow separate and distinct from the Infowars and PrisonPlanet websites ("News Sites") that peddle in hate-filled and discriminatory rhetoric.  This argument ignores PayPal's User Agreement, which gives PayPal the contractual right to terminate any user agreement, for any reason, at its discretion.  It is also wrong as a matter of fact.  The News Sites include prominent links to the Store Site and advertisements for products sold on the Store Site.  *See* Tillery Decl., Exs. B and C (screen shots News Sites home pages).  Conversely, the Store Site touts the fact that proceeds from product sales are being used to support the activities of the News Sites.  *Id.*, Ex. D (screen shot of the Store Site homepage) ("We're proud of our fellow patriots and Infowarriors for taking part and helping to support us in the fight for truth. … Your gracious support for our crew in the fight for

---

[10] https://www.infowarsstore.com/

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)
1306235

liberty goes directly towards independent alternative news media, and we owe all of our success and effectiveness to you.").  Indeed, when addressing its purported harm, FSS highlights the close relationship between the News Sites and the Store Site, arguing that a permanent limitation of Store Site's PayPal Account would result in a loss of "good will and prospective visitors of the News Sites."  TRO Br. at 8.  The News Sites also directly solicit donations and subscription fees, also processed by PayPal.

It appears FSS wants to have it both ways.  With respect to the merits of its UCL claim, it alleges that the News Sites and Store Sites are unrelated, framing PayPal's decision to terminate the Store Site's account as unconscionably based on alleged "off-platform activities" (*i.e.*, the activities of the News Sites).  *See* TRO Br. at 14.  But when it comes to its alleged harm, FSS reverses course, stressing the close relationship between the News Sites and Store Sites and claiming that the termination of the Store Site's account will result in harm to the News Sites. *See* TRO Br. 8.  Despite FSS' conflicting arguments, the record is clear: the activities of News Sites and the sales on Store Site are directly related and violate PayPal's Acceptable Use Policy. Finally, there is nothing in the PayPal's User Agreement or Acceptable Use Policy to suggest that PayPal would tolerate the hateful and discriminatory activities of one of its users, so long as it takes place in a different forum.

For these reasons, FSS cannot establish that PayPal acted unconscionably in deciding to exercise is contractual right to terminate its relationship FSS.

### 3. FSS has not established a likelihood of success on its breach of the implied covenant claim

There is no question that the express terms of PayPal's User Agreement, which governs its business relationship with FSS, gives PayPal the right, in its "sole discretion," to restrict or terminate a user's account, "for any reason and at any time[.]"  Tillery Decl., Ex. A at 33-34.  FSS does not argue otherwise.  Nor does it argue that this provision renders the parties' agreement illusory such that it is unenforceable.  Rather, FSS argues, without citation, that PayPal has nonetheless violated the implied covenant because it did not fairly exercise its discretionary power to terminate FSS' accounts.  *See* TRO Br. at 19.  FSS' argument misinterprets the law and

1    fails to establish a likelihood of success on the merits.

2         Under California law, Courts may not read an implied covenant into a contract to prohibit

3    a party from doing something that is expressly permitted by the agreement.  *Carma*, 2 Cal. 4th at

4    374.  Thus, "courts are not at liberty to imply a covenant directly at odds with a contract's express

5    grant of discretionary power except in those relatively rare instances when reading the provision

6    literally would, contrary to the parties' clear intention, result in an unenforceable, illusory

7    agreement."  *Third Story Music,* 41 Cal. App. 4th at 808; *accord Cry Wolf v. Walt Disney*

8    *Pictures & Television,* 162 Cal. App. 4th 1107, 1122 (2008) ("[S]o long as the agreement is

9    supported by adequate consideration such that the grant of discretion does not render it illusory,

10   the court will not recognize or enforce an implied term directly at odds with an express

11   contractual grant of unfettered discretion.").

12        In *Third Story Music*, for example, the parties had an agreement under which Warner

13   Communications agreed to manufacture, sell, distribute, and advertise the works of Tom Waits,

14   but the agreement also stated that Warner "may at our election refrain from any or all of the

15   foregoing."  *Id.* at 801.  The plaintiff sued for breach of the implied covenant of good faith and

16   fair dealing, claiming that Warner had impeded the plaintiff from receiving the benefits of the

17   contract (a percentage of royalties) by allowing lucrative deals to fall apart.  The Court of Appeal

18   concluded as a matter of law that—because there was consideration for the agreement, and the

19   agreement gave Warner discretionary power and expressly allowed Warner to refrain from

20   marketing the Waits recordings--Warner had no duty of good faith in exercising its discretion.  *Id.*

21   at 808–09.

22        Consistent with this established law, California courts consistently have declined to apply

23   the implied covenant to express contractual provisions allowing for termination for any reason.

24   *See, e.g., PMC, Inc. v. Porthole Yachts, Ltd*., 65 Cal. App. 4th 882, 890–92 (1998) (rejecting

25   application of implied covenant to termination provision allowing for termination for any reason);

26   *Gerdlund v. Elec. Dispensers Int'l*, 190 Cal. App. 3d 263, 277 (1987) (error to apply implied

27   covenant to express provision allowing notice of termination to be given "at any time and for any

28   reason").  The present case is no different.  PayPal's relationship with FSS is a contractual

15

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

relationship between two business entities, nothing more.  And PayPal has done only what the parties' contract expressly gives it the right to do.  Under these circumstances, there can be no breach of the implied covenant.  *See Vectren Commc'ns Servs. v. City of Alameda*, No. C 08-3137 SI, 2009 WL 2566722, at *4–6 (N.D. Cal. Aug. 18, 2009).

*       *       *

In sum, FSS has failed to establish a likelihood of success on the merits of any of its claims.  And "[w]hen . . . a party has not shown any chance of success on the merits, no further determination of irreparable harm or balancing of hardships is necessary."  *Global Horizons, Inc. v. United States Dep't of Labor*, 510 F.3d 1054, 1058 (9th Cir. 2007).  Accordingly, the Court should deny FSS' motion.

### C.    The balance of hardships and the public interest are in PayPal's favor

Although the Court need not reach the issue, given FSS' other failures of proof, the balance of the equities also tips strongly in PayPal's favor.  The relief FSS seeks—forcing PayPal to continue to provide services to a commercial enterprise whose business objective and practices are contrary to PayPal's business practices—would violate PayPal's exercise of its constitutionally protected right to free speech.  *Cf., Miami Herald Publ'g Co. v. Tornillo*, 418 U.S. 241 (1974) (holding a right of reply statute unconstitutional as coerced speech in violation of the First Amendment).

By its own admission, FSS trades in inflammatory and controversial content.  That is its business.  FSS fails to cite any authority for the proposition that a private, non-governmental actor such as PayPal may be compelled to provide commercial services to a business whose products and messages are contrary to its own core company values.  A purveyor of hate speech and discrimination is not entitled to compel a private, non-governmental service provider to continue to do business with such an entity.  To the contrary, such compelled support for private speech raises serious First Amendment concerns.  *See Janus*, 138 S. Ct. at 2464 ("Compelling a person to subsidize the speech of other private speakers raises … First Amendment concerns.") "As Jefferson famously put it, 'to compel a man to furnish contributions of money for the propagation of opinions which he disbelieves and abhor[s] is sinful and tyrannical.'" *Id.* (quoting

16

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

1   A Bill for Establishing Religious Freedom, in 2 Papers of Thomas Jefferson 545 (J. Boyd ed.

2   1950)).  FSS may have a right to publish what it publishes on the Internet.  But no law requires

3   PayPal to provide its services to help FSS reap a profit or allows FSS to trade on PayPal's good

4   name and brand.  For the same reasons, the public interest would not be served by FSS'

5   unprecedented requested injunction.

6          Furthermore, FSS' conduct related to this matter constitutes unclean hands, which "closes

7   the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter

8   in which he seeks relief."  *Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co.*, 324 U.S.

9   806, 814 (1945).  FSS demonstrated remarkable bad faith (and likely violated California law)

10   when it surreptitiously recorded, without PayPal's consent, the very telephone conversation in

11   which PayPal apprised FSS of its termination decision and gave FSS ten business days to

12   transition to a new service provider.  Machock Decl. ¶¶ 6, 11.  FSS continued to demonstrate bad

13   faith by promptly posting the surreptitiously recorded call on its website, again without notice to

14   or permission from PayPal.  Mr. Jones himself, at the conclusion of the posted video including the

15   surreptitiously recorded call, requests that his listeners "cancel PayPal."[11]  Mr. Jones' own

16   statement on the video belies his belated assertion of irreparable harm in his declaration and

17   further demonstrates FSS' bad faith.

18   **V.      CONCLUSION**

19          FSS' motion for a temporary restraining order is long on self-serving rhetoric and almost

20   completely lacking in factual or legal support.  FSS has not established and cannot establish any

21   genuine risk of irreparable harm—there are any number of other companies to whom FSS could

22   turn for payment processing services.  And FSS' legal claims are unprecedented and unfounded.

23   If countenanced, FSS' claims would force PayPal to continue to do business with a company

24   whose mission and message are contrary to its own, notwithstanding PayPal's clear contractual

25   right to end the parties' relationship.  For these reasons, PayPal respectfully requests that the

26   Court deny FSS' Motion for a Temporary Restraining Order and Preliminary Injunction in its

27
28
---
[11] *See* https://www.infowars.com/shock-audio-listen-to-the-phone-call-where-paypal-banned-infowars/.

PAYPAL'S OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR
A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION
Case No. 5:18-cv-06013 LHK (SVK)

1306235

1   entirety.

2

3

4                                              Respectfully submitted,

5   Dated: October 4, 2018                    KEKER, VAN NEST & PETERS LLP

6

7                                   By:   /s/ *Khari J. Tillery*
                                          MATTHEW M. WERDEGAR
8                                         KHARI J. TILLERY

9                                         BALLARD SPAHR LLP
                                          DAVID J. BODNEY (pro hac vice to be
10                                        filed)
                                          MARK S. KOKANOVICH (SBN 230286)
11                                        SCOTT S. HUMPHREYS (SBN 298021)

12                                        Attorneys for Defendant
                                          PAYPAL, INC.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

18

1306235